**Joseph OBERT, Plaintiff,**

v.

**REPUBLIC WESTERN INSURANCE COMPANY, Joseph J. Fratus, Stephanie Fratus Forte, and Carissa Fratus, a Minor, p.p.a. Joseph J. Fratus and Stephanie Fratus Forte, Defendants.**

**Republic Western Insurance Company, Third-party Plaintiff,**

v.

**Jefrey C. Schreck, a professional corporation, Third-party Defendant.**

**C.A. No. 01–324L.**

United States District Court, D. Rhode Island.

March 29, 2002.

Max Wistow, Wistow & Barylick, Providence, RI, for plaintiff.

Elizabeth McDonough Noonan, Adler Pollock & Sheehan, Providence, RI, Robert Macleish, Jr., Robert A. Sherman, Annapoorni Sankaran, Greenberg Traurig, LLP, Boston, MA, for Defendants.

## OPINION AND ORDER

LAGUEUX, Senior District Judge.

On September 5, 2001, defendant Republic Western filed a motion to disqualify this Judge pursuant to 28 U.S.C. § 455(a). In the alternative, Republic Western requests that this matter be referred to U.S. District Judge Mary Lisi of this Court, who Republic Western contends was originally assigned to this case. This Court, for the reasons herein set forth, denies Republic Western's motion to disqualify. Furthermore, this Court declines to refer the matter to Judge Lisi. Finally, because of reasons that will become apparent in

this opinion, this Court will issue a show cause order preparatory to revoking the pro hac vice admission of Republic Western's counsel in this case.

## I. BACKGROUND

Nearly seventeen years ago, on June 4, 1985, Joseph F. Fratus was gravely injured in an accident in Cranston, Rhode Island. While directing traffic at a construction site, Fratus was hit by a rented U–Haul truck, driven by Joseph Obert, plaintiff in this case. At the time, Obert was working for American Drywall Company, Inc. and was driving the truck as part of his job. Republic Western was U–Haul's insurer.

Fratus and his family sued Obert, Drywall, and U–Haul in this Court, and Republic Western defended the suit. *Fratus v. Amerco*, C.A. No. 87–364–B. The case was assigned to then Chief Judge Francis J. Boyle. On December 12, 1988, the jury returned a verdict in favor of the Fratuses against Obert, Drywall, and U–Haul and awarded the Fratuses over three million dollars. U–Haul challenged whether it was vicariously liable as a matter of law, and the question was certified to the Rhode Island Supreme Court. The Rhode Island Supreme Court ruled, as a matter of state law, that U–Haul was not jointly and severally liable for Obert's and Drywall's negligence. *Fratus v. Amerco*, 575 A.2d 989 (R.I.1990). Thereafter, on July 2, 1990, Judge Boyle entered judgment in accordance with that decision. At that time, it was undisputed that Republic Western, as U–Haul's insurer, had to pay at least $25,000 to the Fratuses, the minimum insurance coverage that the state required. Payment was not made until October 24, 1994. The Fratuses and Republic Western, however, disputed the payment of interest on the judgment. On July 26, 1994, the Fratuses again sued in this Court claiming that, under the terms of the basic operative policy, Republic Western was obligated to pay all of the interest that had accrued on the original judgment and not just the interest accrued on $25,000. On May 29, 1997, Judge Boyle (then a senior judge) determined that the Fratuses were entitled to post-judgment interest for the period from December 12, 1988 to October 20, 1994 on the full amount of the judgment. *Fratus v. Republic Western Ins. Co.*, 963 F.Supp. 113 (D.R.I.1997). Republic Western appealed that ruling to the First Circuit Court of Appeals. Judge Boyle also found that certain additional umbrella policies issued by Republic Western to U–Haul ("the excess policies") did not apply to make Obert an insured. The Fratuses appealed that determination. The First Circuit agreed with Judge Boyle that the clear and unambiguous terms of the basic policy required Republic Western to pay all interest on the entire judgment, up to the date that the amount that it was obligated to pay, $25,000, was actually paid. *Fratus v. Republic Western Ins. Co.*, 147 F.3d 25, 28–29, 33 (1st Cir.1998). Post-judgment interest amounted to over one million dollars. The First Circuit also modified the pre-judgment interest award. With regard to the coverage provided by the excess policies, the First Circuit remanded the issue to this Court because there was a material dispute of fact. *Id.* at 33. The First Circuit noted that the claim of the Fratuses that Republic Western was not being truthful about certain endorsements concerning the original policy were "not altogether unsupported." *Id.* at 32. The First Circuit also remanded for a factual finding on the issue of the dates of coverage of one policy. *Id.* at 33. Therefore, after remand, the key issue that this Court had to decide was whether Obert was an insured under the excess policies that Re-

public Western had issued to U–Haul before the accident.

After the First Circuit remanded the case to this Court, it was reassigned to this writer on July 15, 1998, using the process of random assignment. The case was reassigned because Judge Boyle, who had overseen all the prior litigation, had taken inactive senior status. This Judge, consistent with the First Circuit's ruling, allowed discovery to proceed on the limited disputed issues of fact to be resolved on remand. A host of discovery disputes consumed a large part of 1999 and most of 2000. Just prior to the trial date set by this Court, the case was dismissed with prejudice on September 5, 2000 after a settlement agreement had been reached between the Fratuses and Republic Western which required Republic Western to pay over two million more dollars to the Fratuses. The liability of Obert was not released or disclosed by the settlement so the Fratuses continued to seek payment from Obert on the part of the original judgment remaining unpaid.

A year later, on July 3, 2001, the instant case was filed by Obert in this Court. Count I of the Complaint alleges numerous bad faith acts on the part of Republic Western, relating to its duty to defend Obert in the lawsuits arising from the accident, to keep Obert truthfully informed of the status of his rights, and to indemnify Obert for claims that survive settlement. Count II alleges that, because a reasonable person would believe that Obert was insured, Republic Western breached its contractual obligations to Obert in not including him in the settlement. Count III claims that Republic Western owed Obert a duty of good faith and fair dealing and that it breached that implied duty. Count IV seeks a declaration from this Court as to the amount of outstanding judgment liability that Obert owes to the Fratuses.

On September 10, 2001, Republic Western filed a third-party complaint against Jeffrey C. Schreck, the Rhode Island lawyer hired by Republic Western to represent Obert in the original case. Republic Western seeks indemnification from Schreck for any amounts that it may be required to pay Obert, because of his alleged negligence in handling the case. On the same day that Obert filed this case, Republic Western filed a declaratory judgment action against Obert in the U.S. District Court for the District of Massachusets sitting in Worcester, seeking a ruling that Obert is not an insured under the excess policies. Consequently, the key issue in both cases is whether Obert was an insured under the excess policies at the time of the accident.

On September 5, 2001, defendant Republic Western moved to disqualify this Judge pursuant to 28 U.S.C. § 455(a). The motion was accompanied by a memorandum of law and several affidavits. Both plaintiff Obert and the Fratuses as defendants in this case filed objections to the motion. A hearing on the matter was held on November 1, 2001. Attending that hearing for defendant Republic Western was Roderick MacLeish, Jr., and Annapoorni Sankaran of the law firm of Greenberg Traurig, LLP, both admitted pro hac vice, and Elizabeth McDonough Noonan of the law firm of Adler Pollock & Sheehan, local counsel. Peter Cerilli and Fred Polacek (who left early to attend an unrelated state court proceeding) represented the Fratuses. Max Wistow appeared as plaintiff's counsel. On the same day, the Court issued an order staying the case pending a written decision on the motion to disqualify.

## II. LEGAL STANDARD

Section 455(a) of Title 28 of the United States Code sets forth when a fed-

eral judge must disqualify him or herself from a proceeding. "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a).[1] The statute contains mandatory language directing a judge to recuse himself or herself upon the occurrence of certain conditions. Most importantly, a judge does not have to wait and, in this Judge's opinion, should not wait until a party moves for disqualification. It is the judge's duty to ensure that his or her presence does not taint the process of justice or the integrity of the United States Courts.

The integrity of the Court rests on its ability to remain independent. Independence, in this context, means appearing impartial to the reasonable observer while making unpopular or controversial decisions, picking winners and losers in adversarial proceedings, and maintaining order and respect in the courtroom. In the course of rendering judicial decisions, a judge must be partial only to the law.

■ The statute only mandates disqualification when the situation is such that the judge's impartiality can reasonably be questioned. *Liteky v. United States*, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). The test for disqualification is objective, not subjective. *Id.* It only matters whether the judge reasonably appears to be biased. *Id.* Actual bias is not required for recusal and need not be established. *See In re Boston's Children First*, 244 F.3d 164, 171 (1st Cir.2001). The crux of the analysis, therefore, is what constitutes the reasonable appearance of a judge's partiality. The trial judge determines whether disqualification is warranted, sua sponte or upon motion of a party. *United States v. Snyder*, 235 F.3d 42, 46 (1st Cir.2000) (quoting *In re United States*, 158 F.3d 26, 30 (1st Cir.1998)).

■ The allegation of impermissible partiality must have a factual basis. *In re United States*, 666 F.2d 690, 695 (1st Cir. 1981). The Court must scrutinize the factual accuracy of the motion and any affidavits. *El Fenix de Puerto Rico v. The M/Y JOHANNY*, 36 F.3d 136, 140 (1st Cir.1994) (citing *United States v. Alabama*, 828 F.2d 1532, 1541 (11th Cir.1987)). Under § 455(a), there is no requirement that the judge accept, for purposes of deciding the issue, the allegations as true. *Weatherhead v. Globe Int'l, Inc.*, 832 F.2d 1226, 1227 (10th Cir.1987). If the testimony conflicts, the judge must determine the credibility of the testimony. *In re Cooper*, 821 F.2d 833, 841 (1st Cir.1987). Where the motion is groundless or devoid of factual support, a judge should not recuse him or herself. *Snyder*, 235 F.3d at 46 (quoting *Blizard v. Frechette*, 601 F.2d 1217, 1221 (1st Cir.1979)). This is not to say that the party must prove bias, only that the basis for perceived bias must stem from facts that can be determined.

■ In the First Circuit, a judge has a duty to preside over a case unless probative evidence demonstrates a reasonable factual basis to doubt his or her impartiality. *Snyder*, 235 F.3d at 45–46; *El Fenix*, 36 F.3d at 140–141; *In re United States*, 666 F.2d at 695; *Blizard*, 601 F.2d at 1221 ("A trial judge must hear cases unless some reasonable factual basis to doubt the impartiality or fairness of the tribunal is shown by some kind of probative evi-

---

1. 28 U.S.C. § 455(b) sets forth other, more specific grounds for disqualification. Although Republic Western mentioned § 455(b) at one point in its supporting memorandum of law, Republic Western stated at oral argument that it was relying solely on § 455(a). Since Republic Western has not raised § 455(b) grounds for disqualification, this Court will not discuss that section of the statute.

dence."). A judge is not permitted to abdicate his or her responsibility to decide hard or controversial cases. *In re United States,* 666 F.2d at 695. A litigant is not allowed to "avoid adverse decisions by alleging the slightest of factual bases for bias." *Id.* If the judge were to recuse him or herself on "unsupported, irrational, or highly tenuous speculation," litigants would be able "to exercise a negative veto over the assignment of judges." *Id.* at 694.

Recusal is a serious decision for a judge, not to be entered into lightly. *See Snyder,* 235 F.3d at 45–46. Erroneous recusal may unduly prejudice a party, especially where the judge, through his or her familiarity with the case, can assess the reliability of key witnesses. *Id.* (citing *United States v. Arache,* 946 F.2d 129, 140 (1st Cir.1991)). If recusal were granted too readily and the case bounced from one judge to another, then judicial administration and economy would suffer. *Id.* at 46. Although the judge must consider the duty to sit when making the recusal decision, in close cases doubts should be resolved in favor of recusal. *Id.* at 46 & n. 1 ("Section 455(a) modified, but did not eliminate, the duty to sit doctrine."); *Blizard,* 601 F.2d at 1221 ("In this sense, i.e., that judges hear cases unless there is some reason not to, the 'duty to sit' remains.").

The United States Supreme Court has added some definitional muscle to the objective standard for disqualification. *See Liteky,* 510 U.S. at 555–56, 114 S.Ct. 1147. Additionally, the First Circuit has written extensively on the standard for judicial disqualification. This Court relies on those binding precedents in resolving this motion. One of the crucial areas that the Supreme Court has addressed is the possible appearance of bias that may result from prior statements or actions of a judge made in the context of fulfilling his or her judicial duties. In *Liteky,* the Supreme Court discusses the origin and meaning of the statute and the "extrajudicial source" doctrine. *Id.* at 543–556, 114 S.Ct. 1147. This doctrine's etymology stems from an opinion of Justice Douglas: "The alleged bias and prejudice to be disqualifying ... must stem from an extrajudicial source." *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966).

The extrajudicial source doctrine requires that, to warrant recusal, the judge's bias must stem from events that occur outside of legal proceedings. *Id. Liteky* modified this rule to allow disqualification based on events in the courtroom, but only if pervasive. 510 U.S. at 555, 114 S.Ct. 1147. Past unfavorable decisions of the judge can only rarely be used to argue bias. *Id.* As a general rule, ill will or disgust towards a party developed from evidence presented in a courtroom proceeding cannot be used to argue bias. *Id.* at 555–56, 114 S.Ct. 1147 An unfavorable disposition towards an individual, that is appropriate, does not constitute bias. *Id.* If, however, the judge displays a "pervasive bias" towards one party, "so extreme as to display clear inability to render fair judgment," the judge must recuse himself or herself even if that bias was based on information gleaned in the course of a judicial proceeding. *Id.* at 551, 114 S.Ct. 1147. The Supreme Court further held that a judge's expressions of "impatience, dissatisfaction, annoyance, and even anger" are not a basis for alleging partiality because they are part of a judge's "ordinary efforts at courtroom administration". *Id.* at 555–556, 114 S.Ct. 1147.

*Liteky* based its conclusions on another Supreme Court decision, *Grinnell,* which established the extrajudicial source doctrine in relation to 28 U.S.C. § 144. With *Liteky,* the Supreme Court conclusively

held that this reasoning applied to § 455(a) as well. 510 U.S. at 548, 114 S.Ct. 1147; *see also United States v. Kelley*, 712 F.2d 884, 890 (1st Cir.1983) (a judge's prior ruling adverse to defendant or defendant's counsel is not reasonable grounds for recusal). Therefore, *Liteky* solidified the well established rule that only in the rarest case will the comments of a judge, made in the context of his or her judicial duties, constitute the basis for disqualification. *See* 510 U.S. at 554–55, 114 S.Ct. 1147. The First Circuit has further elaborated on sufficient and insufficient bases for disqualification motions. When a party moves to have a judge disqualified, that in and of itself, does not mandate recusal. Nor can a party, based on conjecture, speculation, or innuendo have a judge disqualified. If a judge could be knocked out by the rumor mill, any litigant could freely go judge shopping. *See El Fenix*, 36 F.3d at 140 ("No permissible reading of subsection 455(a) would suggest that Congress intended to allow a litigant to compel disqualification simply on unfounded innuendo concerning the possible partiality of the presiding judge.").

■■■ The First Circuit, in its numerous decisions on recusal, has established the contours of what constitutes the impermissible appearance of partiality. Obviously, that a judge has participated in prior proceedings involving the same parties or the same facts is not grounds for recusal. *United Union of Roofers, Waterproofers & Allied Workers v. Meese*, 823 F.2d 652, 659 (1st Cir.1987). The judge's personal views on legal or policy issues are not grounds for recusal unless the judge is unable to implement the law. *Snyder*, 235 F.3d at 48. The First Circuit has noted that opinions, even very strong opinions, are an indication of an active mind. *Id.* ("Proof that a [judge's] mind ... was a complete tabula rasa ... would be evidence of lack of qualification, not lack of bias.") (quoting *Laird v. Tatum*, 409 U.S. 824, 825, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972)).

■■■ The judge's conduct in the courtroom, towards counsel, or opposition to a party's legal position, is normally not grounds for disqualification. *Id.; In re Cooper*, 821 F.2d at 838 ("Generally, clashes between court and counsel are an insufficient basis for disqualification under [the] statute."). This is true even if a judge's remarks have a confrontational or angry tone or suggest predetermination of the merits. *In re Boston Children's First*, 244 F.3d 164, 169 (1st Cir.2001). Courtroom comments differ from comments made to the press about pending litigation, which, due in part to their rarity and ambiguity, may be more easily misinterpreted as evidence of bias by a reasonable person. *Id.* at 170.

## III. DEFENDANT REPUBLIC WESTERN'S ALLEGATIONS

Republic Western's motion to disqualify is based on two allegations: the case was assigned improperly and this Judge's conduct in the instant and prior proceedings reasonably appears biased. As stated above, the Court must examine the allegations for factual accuracy. *See El Fenix*, 36 F.3d at 140–41. The Court must then examine the facts as a reasonable person would see them in order to determine if they create an impermissible appearance of partiality. *See Liteky*, 510 U.S. at 548, 114 S.Ct. 1147.

## A. ALLEGATION REGARDING CASE ASSIGNMENT

Republic Western alleges that, when this Judge accepted assignment of the instant case, the rules of the Court were violated, casting an aura of improper partiality over these proceedings such that this Judge should disqualify himself. This

breaks down to two questions. First, the Court must determine whether the Local Rules were violated. Second, the Court must determine whether the events cast an aura of impropriety over this Judge by which impartiality may be reasonably questioned. Republic Western additionally argues that the process of assigning this case violated the principle of random case assignment, essential to public confidence in the judiciary.

In essence, Republic Western alleges that plaintiff's counsel, by amending the civil cover sheet accompanying the complaint the next business day after filing, engaged in a blatant attempt at judge-shopping. This rule "violation," plaintiff's judge-shopping, and the "mysterious transfer" of the case from Judge Lisi to this writer, Republic Western contends, casts such an aura of partiality that disqualification is demanded. Republic Western is using smoke and mirrors to generate a cloud of confusion in a futile attempt to create some sort of appearance of wrong-doing. Republic Western has the audacity to accuse plaintiff of judge-shopping when that is exactly what it is doing. It is Republic Western who is attempting to do everything possible to insure that this writer does not preside over this case. As will become evident, there is no basis for this Judge's disqualification.

### 1. Findings of Fact

This Court makes the following findings of fact. On July 3, 2001, plaintiff's attorney filed a complaint in this case and a civil cover sheet. This civil cover sheet did not list any related cases. On July 4, 2001, the clerk's office was closed. On July 5, 2001, plaintiff's attorney filed an amended civil cover sheet listing two related cases. One case, civil action 87–0364–B, had been originally assigned to Judge Boyle. The

other, civil action 94–385–L, also had been assigned to Judge Boyle, as a related matter. When Judge Boyle, in effect, retired, that action was transferred to this Judge on July 15, 1998. The amended civil cover sheet was accompanied by a letter from plaintiff's attorney stating that the amendment "adds related cases that were inadvertently omitted from the original civil cover sheet." Both cover sheets and the letter are part of the court file in this case. The parties do not dispute these facts. The Court further credits the affidavit of Stephen P. Sheehan, the attorney who filed both cover sheets, that the initial cover sheet was made in error and that an amended cover sheet was promptly filed to correct that error. See Sheehan Aff. ¶ 2,4.

### 2. Local Rules and Practice Governing Case Assignment

When a civil complaint is filed in this Court, a civil cover sheet must accompany the complaint. Local Rule 11(a)(2). The Court now uses form JS–44. In section VIII of the civil cover sheet, the attorney must list any related cases. The term "related cases" is not defined in the Local Rules. There is an illustration of what constitutes a related case on the back of the civil cover sheet. The description on the form reads: "This section of the JS–44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases." That is an illustration of and not a limitation on what constitutes a related case. As stated on form JS–44, it was prepared by the Judicial Conference of the United States in 1974, not by this District Court. The primary purpose of JS–44 is to facilitate the statistical record-keeping of the Judicial Conference.[2] It is not inclusive of

**2.** "The Conference was advised that an exper-

imental civil docket package developed by the

all the instances of related cases that, in the practice and procedure of this Court, are included in the definition of related cases. It is not inclusive because the civil action cover sheet only mentions "pending cases," not prior cases. It has been the long-standing practice of this Court to consider both related pending and prior cases as "related cases."

Rule 7 of the Local Rules of the District of Rhode Island pertains to case assignment. Effective January 1, 1994, by order of the Chief Judge, Local Rules 7(a), (b), and (c) governing case assignment were suspended. Order, Misc. No. 93–104 (D.R.I. December 17, 1993). In addition, the Order states that assignment of cases "will be accomplished by use of a computer program utilizing the random method of judge selection which has been previously approved by me." Id.[3] This Court notes that Republic Western, in quoting this passage, left out two key words—"by me". "By me" means, quite literally, by me as I was the Chief Judge that signed that Order. See id.

At the time the order was signed, this Court assigned cases randomly unless they were related. It is the long-standing practice of this Court to follow this standard exception to random assignment. See, e.g., United States v. Corrente, C.R. No. 00–83L at 37–41 (Nov. 27, 2000). Where, in the interests of judicial economy and swift administration of justice, when cases are related, all of the cases are assigned to the same judge. When this case was offered to me, I accepted it because it was related to prior cases with which I was familiar and I did not even know it had been drawn to another judge before it was sent to me.

The procedure in this District, when I was Chief Judge, was as follows: when a case was filed, whether or not it referred to a prior or pending matter, the case was drawn and assigned to a judge. The case was then sent to the judge who had prior dealings with the matter. If the same judge drew the case who also had the related matter, then that judge kept the case. If it was a different judge that had the related matter, the case would be sent to that judge and that judge would have

Administrative Office has been in use in 11 district courts, along with a companion form JS 44. This docket package is designed to reduce the clerical effort required to initiate the docket sheet and the JS 5 and JS 6 statistical reports for each case and, in addition, removes the burden of searching the complaint for the issue involved from the filing clerk to the attorney. This information is necessary, of course, for the placement of the case into the appropriate statistical nature of suit category. In view of the excellent test results and the comments from the users of the experimental form, the Committee recommended and the Conference approved the extension of the new civil docket sheet to all district courts by January 1, 1975 in accordance with Rule 79(a) of the Federal Rules of Civil Procedure." *Reports of the Proceedings of the Judicial Conference of the United States* 50 (1974).

3. In Republic Western's brief, counsel cites to compiler's note to Local Rule 7 and the District of Rhode island Civil Justice Expense and Delay Reduction Plan as of January 1, 1994 for support that the procedures used in *this case violated the local rules.* The compiler's notes are not a part of the local rules nor do they appear in the official copy of the local rules. The notes are part of the annotated Rhode Island Court Rules published by Lexis Publishing and are written by that company. Republic Western also cites to the Civil Justice Expenses and Delay Reduction Plan for support. *The Plan contains a series of recommendations and the Court's statements on what recommendations it will adopt.* The Plan's purpose is "to enhance and supplement the pre-existing and established practices and procedures of this Court." The Plan does not specifically address the issue of random assignment, only the categories used to assign cases.

the prerogative of deciding whether it was related and to accept it.

When Chief Judge Torres assumed the Chief Judge's position on December 1, 1999, he changed the procedure slightly. The intake clerk now determines if there is any information on the cover sheet that indicates that the case is a related matter, and, if so, sends the case, before it is drawn, to the judge that had the related matter and that judge has the prerogative of accepting it or sending it back to be drawn by the random method.

### 3. Analysis of Alleged Local Rule Violation

As this case is related to a prior case that was on this Judge's calendar, the case was assigned in a manner consistent with the Local Rules. To see this Court's assignment practice at work, one need not look any further than the three cases filed in this Court stemming from the June 1985 accident. When the 1994 action was filed, the 1987 action was, in essence, closed. Judgment had been entered and no docket entries had been made since 1990. The 1994 action, however, was assigned to Judge Boyle, the same judge who had presided over the 1987 action. It was assigned to the same judge because the two actions were related. Both lawsuits stemmed from the same incident and involved the same parties. Most importantly, the 1994 action concerned the payment of the judgment entered in the 1987 action. The instant action, too, concerns the payment of the judgment entered in the 1987 action. All three cases are related.

It is obvious what happened in this case. The intake clerk did not know the instant case was a related matter until the amended civil cover sheet was filed. In the meantime the case had been drawn by Judge Lisi. The amended cover sheet made it clear that the case was a related

matter, and the case was sent to me, the appropriate judge. As this Judge was already familiar with the case, in the interest of judicial economy, this Judge opted to take it on.

The practice of this Court is to deem cases related when they arise out of the same events. Here, that is clearly the case. There is an ongoing issue of liability that has been litigated and re-litigated by the parties. It involves the same people, stems from the same accident, and focuses on the same insurance policies. Count IV of the complaint seeks a declaratory judgment as to Obert's outstanding liability as a result of the settlement agreement, leading to dismissal of the Fratus case by the Court on September 5, 2000. It is most appropriate that this Judge resolve that issue. Counts I, II, and III raise the question as to whether Obert is an insured under the excess policies. This Court has already closely examined that issue having denied Republic Western's two motions for summary judgment on that point in the Fratus case. Designating these cases as related serves the substantial interest of conserving judicial resources.

The civil cover sheet sets forth a summary description of related cases to guide attorneys filing complaints. Republic Western argues that this case does not fall into that definition. It need not. A related case can be either a pending or prior case, in accordance with the long-standing practice of this Court. There is no requirement that this definition be written into the Local Rules. This case could not be more related to the prior cases heard by this Judge. Quite simply, there was no violation of the Local Rules.

If Republic Western wanted to challenge plaintiff's designation of the case as related, the proper course of action would have been to file a timely objection to this designation. Republic Western did not file such

an objection and has since waived that objection. Any objection to the related case designation must be filed promptly at the outset of litigation. If this objection could be raised at any time, it would severely strain judicial resources, for a party could wait until the case was well underway, and when dissatisfied with any of the Court's rulings, could seek to undercut the judge by having the case reassigned on a technicality. This would allow judge-shopping during the course of ongoing litigation.

Republic Western did not object to the related case designation. That was the proper course of action to take had it believed that the cases were not related. Instead, Republic Western seeks to impute malfeasance, ill motivation and collusion to the clerk's office, plaintiff's attorney and this Judge. At oral argument on this motion, Republic Western's counsel stated: "Now there may well, as your Honor stated, to be a perfectly innocent explanation for all of this, but the way that it appears is that there was a purposeful attempt to get this matter to your Honor." November 1, 2001 Hr'g, Tr. At 18. There is no factual basis for this claim. Republic Western has not shown one scintilla of evidence that the mistake in the initial filing of the civil cover sheet was anything but an error by plaintiff's counsel. *See El Fenix,* 36 F.3d at 140. More importantly, Republic Western has demonstrated no basis to impugn the actions of the clerk's office. Republic Western is engineering a smear campaign against the Court and its employees in an effort to get another judge assigned to this case. This disdainful brand of lawyering will not be tolerated.

### 4. *The Role of Random Assignment*

Republic Western claims that random assignment is essential to public confidence in the judiciary. Therefore, Republic Western is implicitly arguing that any case that is not randomly assigned is tainted with partiality, implying a per se violation of § 455(a). In other words, if a case is not randomly assigned, the judge must recuse him or herself from hearing the case because a reasonable person would question the judge's impartiality. Republic Western's argument lacks merit.

Random assignment of cases is an important component of today's judicial housekeeping. It has been practiced in the District of Rhode Island since 1966 when this became a two judge court. Although random assignment is an important innovation in the judiciary, facilitated greatly by the presence of computers, it is not a necessary component to a judge's impartiality. There is nothing about the practice of random assignment that would invalidate the Local Rules of this Court. There is no statute that requires random assignment. Congress delegated the power over assignments to the District Courts. 28 U.S.C. § 137. ("The business of a court having more than one judge shall be divided among the judges as provided by the rules and orders of the court."). There is no constitutional basis for such a requirement and Republic Western does not make a constitutional argument. *See, e.g., United States v. Keane,* 522 F.2d 534, 557 (7th Cir.1975) (rejecting argument that due process requires that a criminal case be randomly assigned); *United States v. Simmons,* 476 F.2d 33, 35–36 (9th Cir.1973) (same).

Furthermore, there are well-established exceptions to the general practice of random assignment. Assigning related matters to the same judge is one of the most recognized. *See, e.g.,* III *Guide to Judiciary Policies and Procedures: Judges Manual,* Sec. A, Ch. IV, 5–6 (1999) ("Many courts have also implemented special pro-

cedures ... for assuring that related cases are all assigned to the same judge."). Random assignment also does not apply when a case is heard on remand from an appellate court, referring the matter back to the initial judge. *See, e.g.,* Local Rule 7(g). There are also exceptions for emergencies and re-filed actions. *See, e.g.,* Local Rule 7(e); Local Rule 8. Therefore, random assignment is not required to satisfy the standard of impartiality of § 455(a). It is a tool used by the judiciary to increase public confidence, but it is balanced against the needs of efficiency in judicial administration. Random assignment cannot shoulder the burden that Republic Western seeks to place on it.

Republic Western cites *United States v. Phillips,* a decision from the District of Utah, to buttress its arguments concerning the importance of random assignment. 59 F.Supp.2d 1178 (D.Utah 1999). *Phillips* is, of course, not binding on this Court. *Phillips'* holding rested entirely on a reading of the local rules of the District of Utah for criminal cases. *See id.* at 1179–180. Because of a dispute among the judges of that district regarding case assignment dating back to 1958, the Tenth Circuit Judicial Council mandated certain rules for case assignment in that district. *See Utah–Idaho Sugar Co. v. Ritter,* 461 F.2d 1100, 1101–102 (10th Cir.1972) (discussing history of the local rules of Utah). The District of Utah has no related case designation for criminal cases. *Phillips,* 59 F.Supp.2d at 1179–180. That District Court's unique local rules, however, apply to that federal district alone. Additionally, the general policy statements made in *Phillips* regarding random assignment, cited in Republic Western's brief and at oral argument, have been misused by Republic Western. The focus of those statements is not random assignment as an end in itself, but judge-shopping by parties. *See id.* at 1180.

Republic Western misreads another case in its search to find support for the proposition that the Court must follow random assignment unwaveringly to render fair and impartial verdicts. *See Tripp v. Executive Office of the President,* 196 F.R.D. 201 (D.D.C.2000). *Tripp* does discuss random assignment, but the thrust of the decision concerns when it is appropriate to deviate from random assignment, not whether it is ever appropriate to deviate from random assignment. *See id.* at 202–03. In *Tripp,* plaintiff sought to have her case designated as related to an existing lawsuit. *Id.* at 201–02. The judge denied plaintiff's motion, reasoning that there was no overlap of the two cases' factual claims and that any concurrent area of discovery was not sufficient to render the cases related. *Id.* at 202–03. The Court specifically noted that there were other bases for seeking related status. *Id.* at 202, n. 1. Finally, as in *Phillips,* the *Tripp* Court was interpreting its local rules.

Republic Western has asserted no basis upon which to invalidate the Local Rules and practices of this District. The practices and rules of other district courts governing random assignment and related case designations are not binding on this Court. There is no statutory or constitutional requirement that a case be randomly assigned. Any deviation from random assignment does not automatically call into question the impartiality of the Court, especially when such a departure, as the related case designation is a well-known and long-standing exception to the general practice of random assignment.

## B. ALLEGATIONS BASED ON JUDGE'S CONDUCT

Defendant Republic Western's second argument for disqualification focuses on the conduct of this Judge in two proceed-

ings. Republic Western concludes that the conduct of this Judge in those proceedings, examined in totality, could reasonably be considered partial, warranting disqualification under § 455(a).

First, Republic Western cites a May 25, 2000 hearing. That hearing concerned a motion to amend the answer and counterclaim filed by Republic Western in the Fratus case-ancient history at best. Republic Western cites comments made by this Judge in an opinion rendered from the bench, that its motion was frivolous, that Republic Western was attempting to delay resolution of the case, and that Republic Western was acting in an uncooperative manner. This Judge also mentioned the possibility of sanctions to be imposed on Republic Western's counsel.

Second, Republic Western cites an August 9, 2001 in-chambers conference in this case which Republic Western falsely describes as a hearing. That conference concerned a motion for a temporary restraining order sought by Obert to prevent Republic Western from prosecuting the mirror action in the District of Massachusetts. Republic Western also claims that this Judge has deprived Republic Western of due process by not allowing it the appropriate time to respond to the request for temporary restraining order, by holding a hearing in chambers, by not allowing Republic Western the opportunity to be heard and by threatening ex parte communications.

1. *Findings of Fact as to the May 25, 2000 Hearing*

At the May 25, 2000 hearing, the Court issued a bench ruling on Republic Western's motion to amend the answer to assert a counterclaim in the Fratus case, C.A. 94–385 L. At the time of the ruling, six years had passed since the filing of the initial complaint in C.A. 94–385 L, the second lawsuit relating to this accident filed in this Court. Two years had passed since the First Circuit remanded the issue of whether Obert was an insured under the excess policies. Republic Western had filed successive motions for summary judgment within the year before it filed the motion to amend the answer to assert a counterclaim. Those motions had been denied by this Judge because they lacked merit. Numerous discovery disputes had been argued and resolved.

Any comments made by the Court stemmed from a sincere wish to see a fair and swift resolution of the issues before it. As the transcript of the May 25, 2000 hearing demonstrates, the Court determined that Republic Western, as a matter of law, did not have a basis on which to amend its answer. *See* May 25, 2000, Hr'g, Tr. at 6. First, Republic Western was seeking the equitable remedy of reformation of contracts for the excess policies at issue. Reformation could not be brought against the Fratuses because they were not parties to the agreements. *Id.* at 5. Additionally, the doctrine of laches prohibited the bringing of such a claim so late in the game. *Id.* at 5–6. Furthermore, equity prohibited reforming contracts on which the parties had relied. *Id.* at 5. Although Republic Western claimed newly discovered evidence, the Court did not agree that Republic Western should be allowed to amend its answer based on evidence that was in its control, but not found, for the prior six years. *Id.* at 7. The new "evidence" concerned issues that had been litigated and not before the Court on remand. *Id.* Therefore, the doctrine of res judicata applied. *Id.* It was only after making those conclusions of law, that this Judge stated that the motion was frivolous, that Republic Western "clearly has been dragging its feet and delaying the ultimate resolution of this case, and is

completely in a state of lack of cooperation in doing that." *Id.* at 8. The Court suggested sanctions. Tellingly, Republic Western never appealed this ruling. It settled the Fratus case instead and paid an amount in settlement to cover sanctions.[4]

2. *Findings of Fact as to the August 9, 2001 Conference*

On August 3, 2001, plaintiff Obert filed a motion for a temporary restraining order and preliminary injunction to prevent Republic Western from prosecuting the action filed in the U.S. District Court in Massachusetts. As previously noted, that action was filed against Obert the same day that Obert filed his action here. The Court scheduled an in-chambers conference on the temporary restraining order for August 9, 2001. Early in the conference, the Court informed the parties that the Court would not issue a T.R.O. and the motion for preliminary injunction would be held in abeyance pending the resolution of Obert's motion to dismiss or to transfer the case to Rhode Island filed in Massachusetts and assigned to Judge Nathaniel Gorton sitting in Worcester. The attorneys present at the conference were Mr. Wistow for plaintiff, Mr. MacLeish and Ms. Sankaran of Greenberg Traurig, LLP, and Todd White of Adler Pollock & Sheehan for defendant Republic Western, and finally Mr. Polacek for the Fratuses who had been made defendants in the case.

Several affidavits have been filed in relation to the motion presently before the Court, both in support and opposition. The Court credits the affidavits of Mr. Wistow and Mr. Polacek because those affidavits comport with this Judge's recollection of the events that occurred during the August 9, 2001 conference. *See In re*

*Cooper,* 821 F.2d at 841. The Court makes the following findings of fact relating to that conference. Although counsel for Republic Western repeatedly refer to this conference as a hearing, it was not a hearing. The Court scheduled an in-chambers conference in accordance with its normal procedures. Mr. Wistow informed Ms. Sankaran of the conference by letter dated August 7, 2001 sent by telecopier. Wistow Aff. ¶ 4. The letter explicitly used the word "conference" not hearing. The letter is contained in the docket. Semantics aside, the only issue before the Court was whether a temporary restraining order should issue to prevent Republic Western from prosecuting the action in Massachusetts because of the devious conduct of its counsel. During the conference, the Court unequivocally notified the parties that it would not issue such an order and would not schedule a hearing on the motion for preliminary injunction pending a decision by Judge Gorton on the motions pending before him. No issue concerning the merits of the case was scheduled to be discussed, and, had a hearing on the preliminary injunction motion been deemed necessary, a full hearing with a court reporter, in the courtroom, would have been scheduled forthwith. This is the longstanding practice of this Judge.

It is also the long-standing practice of this Judge to hold an in-chambers conference on emergency motions as quickly as possible. *See, e.g.,* I *Directory of Federal Court Guidelines* 1C–130 (2001 Supp.) (A summary of this Judge's procedures). A motion for a temporary restraining order is an emergency motion. Whenever a motion for temporary restraining order/preliminary injunction is filed, this Judge's practice is to hold a chambers conference

---

4. It is to be noted that all this litigation could have been avoided if Republic Western had secured Obert's release when it settled with the Fratuses. Why it did not do that is a mystery that may be solved when this case is heard on the merits.

regarding the temporary restraining order and then put the matter down for a full hearing on preliminary injunction whether or not the T.R.O. is granted.

The purpose of the conference was to obtain input from the parties about the present action and the mirror action pending in the District Court of Massachusetts. Mr. Wistow presented his position that this Court should be the forum for all litigation in this matter. Mr. MacLeish also spoke, but did not confine his remarks to the purpose of the conference. Instead, he argued the merits of the case. He stated that the original copy of the rental agreement with signatures, the so-called "buff copy" had been found after all these years at about the time that the Fratus settlement had occurred. He also represented that Obert had lied under oath in the original proceeding. The Court informed Mr. MacLeish that if Republic Western established those facts, then it would win this case but that this was a conference relating to the issuance of a T.R.O. Counsel was informed that the Court was not entertaining arguments on the merits and that there was really nothing to address since the Court had decided not to issue a T.R.O. and defer hearing on preliminary injunction. However, Mr. MacLeish continued to argue the merits of the case and attempted to show the Court the document that had recently been found that he said showed conclusively that Obert was not an insured under the excess policies. He was again warned that was not the issue before the Court. He, nevertheless, persisted. He was insolent and obviously trying to bait the Court.

He attempted to show this Judge the buff copy of the original rental agreement—the back side of the rental agreement between Obert and U–Haul. Republic Western claims that it was signed by Obert in 1985 and proved that Republic Western did not insure Obert. The buff copy was allegedly found just when Republic Western was having settlement discussions with the Fratuses in the year 2000.

In response to the appearance of a new document and the allegations that Obert lied in the prior proceedings, the Court noted that Republic Western had itself made misrepresentations in the past. The Court was referring to the fraud perpetrated on the Fratuses, this Court and the First Circuit by Republic Western when it issued a back-dated endorsement to the insurance policies it had issued to U–Haul. The endorsement appeared more than a year after the accident but was dated as of the time of the issuance of the policies. It had the initials of the person who typed it. The endorsement, if genuine, would have made the excess policies inapplicable to Obert. Upon a query by the opposing party, Republic Western had denied knowing whose initials were on the endorsement document. The issue of the veracity of the document was discussed by the First Circuit. The First Circuit found that the allegations that Republic Western was not being entirely truthful were "not altogether unsupported." *Fratus*, 147 F.3d at 32. The factual dispute was remanded to this Court. After some discovery, the administrative assistant to the President of Republic Western admitted in a deposition that her initials were on the document and that she had typed the endorsement over a year after the accident had occurred and had back-dated it. This is knowledge that this Court acquired during the course of the Fratus case. Republic Western could not hope to conceal these facts from any judge who hears this case. In short, Republic Western cannot sweep this shameful episode under the proverbial rug.

Finally, the Court expressed its opinion that this litigation belonged in Rhode Is-

land and not in Massachusetts. The Court informed the parties that it was confident that Judge Gorton, of the District Court of Massachusetts, would agree and transfer that case to this Court. After ascertaining that Mr. Wistow had made a motion to transfer the case to Rhode Island, this Court said that he could inform Judge Gorton of this Court's view on the matter. The Court informed the parties that the case should be heard in Rhode island because the District of Massachusetts did not have jurisdiction over the Fratuses and they were indispensable parties in this case and also because this Court was knowledgeable concerning the whole history of this litigation. Mr. MacLeish protested vociferously. I told him in no uncertain words that I could telephone Judge Gorton and state those views directly to him but rather would leave it to Mr. Wistow to convey the message in an official brief (which Mr. Wistow has done).

## C. ANALYSIS OF ALLEGATIONS UNDER § 455(A)

■ Defendant Republic Western's motion to disqualify this Judge fails to meet the standard set forth in § 455(a). The events that Republic Western alleges to have occurred, examined objectively, do not raise the appearance of impermissible partiality by this Judge. *See Liteky*, 510 U.S. at 555–56, 114 S.Ct. 1147; *In re Boston's Children First*, 244 F.3d at 170–71. As stated above, the Local Rules were not violated when the case was assigned. Plaintiff's counsel erred when filling out the civil cover sheet. There was no requirement that the case be randomly assigned, as the instant case related to prior cases heard by this Judge. Furthermore, Republic Western puts forth no factual basis from which a reasonable person would conclude that there was wrongdoing in the clerk's office or that this Judge engineered reassignment. *See El Fenix*,

36 F.3d at 140–41; *In Re United States*, 666 F.2d at 695. Although Republic Western need not prove actual bias, Republic Western must establish some factual basis for the claim. Here, Republic Western is relying on mere innuendo and speculation to raise the specter of bias; that is not sufficient grounds for disqualification. *See El Fenix*, 36 F.3d at 140–41.

Republic Western's second allegation of bias stems from two incidents that arose in the course of judicial proceedings. Statements made in the course of judicial proceedings, must demonstrate pervasive bias "so extreme as to display a clear inability to render fair judgment." *Liteky*, 510 U.S. at 551, 114 S.Ct. 1147. The incidents in question do not meet this heightened standard. *See id.*

■ If the May 25, 2000 bench ruling indicates bias under § 455(a), then no judge could ever render a decision. This Judge thought the motion was entirely lacking in merit based both on a reading of the law and the remand order from the First Circuit. A party's disagreement with the judge over the law is not grounds for disqualification. *See Liteky*, 510 U.S. at 555, 114 S.Ct. 1147; *Snyder*, 235 F.3d at 48; *In re Cooper*, 821 F.2d at 838. The fact that this Judge used strong language in a ruling does not indicate bias. *See In re Boston's Children First*, 244 F.3d at 169; *Snyder*, 235 F.3d at 48; *In re Cooper*, 821 F.2d at 841, 843. Strong language on the part of a judge is often necessary both to maintain order and respect in the courtroom and to spur recalcitrant parties into action. *See Liteky*, 510 U.S. at 555–56, 114 S.Ct. 1147. This Judge's actions were entirely permissible under § 455(a). *See, e.g., id.; In re Boston's Children First*, 244 F.3d at 169–70; *Snyder*, 235 F.3d at 48.

Before reaching the merits of defendant Republic Western's allegations regarding

the August 9, 2001 conference, this Court finds, for the record, that the affidavit of Ms. Sankaran is filled with misrepresentations, half-truths and outright falsehoods. This Judge has a duty to scrutinize the accuracy of the motion and affidavit and to determine the credibility of the testimony. *See El Fenix,* 36 F.3d at 140; *In re Cooper,* 821 F.2d at 841. The parts of the affidavit where Ms. Sankaran refers to the conference as a "hearing" are false. Sankaran Aff. ¶ 9–14. She herself states in the affidavit that "[t]he hearing on Obert's motion for a temporary restraining order was not held in Judge Lagueux's courtroom, but rather in Judge Lagueux's chambers without a stenographer." *Id.* ¶ 10. This was an attempt to cast aspersions on the Court. That attempt fails. It was an in-chambers conference and conducted in the manner that all in-chambers conferences are conducted.

The statement that this Judge said he was going to tell Judge Gorton to transfer the case to Rhode Island is false. *Id.* at ¶ 11. This Judge informed plaintiff's counsel that he could advise Judge Gorton, that in this Judge's opinion the cases belonged in Rhode Island for valid legal reasons. The statement in the affidavit that this Judge declined to give Republic Western an opportunity to be heard is blatantly false. *Id.* at ¶ 12. This Court gave Mr. MacLeish an opportunity to speak to the issue at hand but informed him to confine his comments to the matters under consideration. He refused to confine his remarks and persisted in arguing the merits of the case. In paragraph 14 of the affidavit, counsel implies that this Judge did not acknowledge the "buff copy" of the rental contract because this Judge assumed it was false. *Id.* at ¶ 14. That statement is a misrepresentation of what transpired. The Court declined to review the document because it was not the purpose of the conference to discuss the merits of the

case. This Judge stated that if the document was what counsel said it was, Republic Western would win this case. The Court cautioned, however, that Republic Western had made prior misrepresentations in the Fratus case and was thus skeptical of this claim. The basis for this Judge's comments have already been discussed and need not be repeated here. For the foregoing reasons, the affidavit is not credible. *See El Fenix,* 36 F.3d at 140; *In re Cooper,* 821 F.2d at 841; *In re United States,* 666 F.2d at 695.

Stripped of falsehoods, misrepresentations, speculation and innuendo, Republic Western's motion to disqualify has demonstrated a transparent attempt to judge-shop, nothing more and nothing less. Counsel for Republic Western has tried to bait the Court and then use comments made by this Judge as grounds for recusal. These litigation tactics are unacceptable. As both the Supreme Court and the First Circuit have held, comments made by the judge in the course of judicial proceedings are rarely sufficient to warrant disqualification. *See, e.g., Liteky,* 510 U.S. at 555–56, 114 S.Ct. 1147; *In re Boston's Children First,* 244 F.3d at 169 & n. 9.; *Snyder,* 235 F.3d at 48; *In re Cooper,* 821 F.2d at 838; *Kelley,* 712 F.2d at 884. Both Courts have cautioned trial judges not to recuse themselves in the face of groundless allegations of partiality. *See, e.g., Liteky,* 510 U.S. at 549, 114 S.Ct. 1147; *Snyder,* 235 F.3d at 45–46; *El Fenix,* 36 F.3d at 140–41; *In re United States,* 666 F.2d at 694. No reasonable person observing the events of August 9, 2001 would conclude that this Judge has pre-judged the merits of this case. No reasonable observer would conclude that this Judge's bench ruling of May 25, 2000 was anything other than a judicial decision worded to keep the litigation moving forward. Finally, no reasonable observer would conclude that

there was any wrongdoing on anyone's part in the case being assigned to this Judge. In short, there is no basis for Republic Western's claims of partiality.[5] This motion is groundless and must be denied. *See, e.g.,* 28 U.S.C. § 455(a); *Liteky,* 510 U.S. at 555–56, 114 S.Ct. 1147; *Snyder,* 235 F.3d at 45–46.

## IV. REASSIGNMENT TO JUDGE LISI

 Republic Western requests that if the Court does not find a violation of § 455(a), the Court nevertheless should reassign the case to Judge Lisi because the present assignment violated the Local Rules. Republic Western has presented no grounds for a unilateral reassignment to Judge Lisi.[6] Republic Western has not objected to the designation of related cases, and even if the Court were to treat this motion as such an objection, as discussed above, this Court would not conclude that this case was erroneously assigned. Most importantly, a judge has a duty to preside over his or her assigned cases unless there is a valid legal ground for disqualification. A judge must do his or her fair share of the work and cannot pass that work along to another judge because one party so wishes. *See, e.g., Snyder,* 235 F.3d at 46; *In re United States,* 666 F.2d at 694–95. Therefore, Republic Western's request for a transfer is denied.

---

**5.** If Republic Western produces authentic documents that establish that Obert is not an insured under the excess policies, then it will prevail in this case, pure and simple.

**6.** Judge Lisi would undoubtedly recuse herself from this case because her husband's law firm represented U–Haul throughout this litigation and U–Haul is bound to be involved in this case in some way.

## V. ADDITIONAL MATTERS

### A. PRO HAC VICE ADMISSION OF REPUBLIC WESTERN'S COUNSEL

This Court will issue a show cause order as to why it should not revoke the pro hac vice admission of Republic Western's counsel, Mr. MacLeish, Ms. Sankaran, and Mr. Sherman, who were admitted to practice law pro hac vice in this case on August 9, 2001.

#### 1. *Local Rules on Pro Hac Vice Practice*

 Pro hac vice counsel serve by the court's permission and are allowed to practice on a case by case basis. Pro hac vice means "for this one occasion." To practice on a given case, pro hac vice counsel must apply by motion which may be granted or denied by the trial court in its discretion. Local Rule 5(c)(1).

In the District of Rhode Island, pro hac vice admissions are governed by Local Rule 5. Rule 5 sets forth several conditions for admission. The attorney must be a member in good standing of the bar of another state and the bar of another United States District Court. Local Rule 5(c). He or she must demonstrate "good cause" as to why the client needs his or her services.[7] In the motion for admission, a pro hac vice applicant must certify that "the attorney agrees to observe and to be bound by the local rules and orders of this Court and Rhode Island Rules of Profes-

---

**7.** "As used herein, good cause refers to circumstances affecting the personal or financial welfare of the client, such as the following: (a) complex field of law in which the attorney is a specialist; (b) the attorney's long-standing representation of the client; (c) lack of experience of the local trial bar in the field; (d) complex legal questions under the law of a foreign jurisdiction; or (e) in a criminal case, the attorney is defendant's counsel of choice." Local Rule 5(c).

sional Conduct." Local Rule 5(c)(1). In addition, pro hac vice counsel may only practice with the assistance of local counsel. Local counsel must have an office in the district and be a member of this Court's bar. Local Rule 5(c)(1). Local counsel is responsible for the content of all papers filed or served in the case and shall certify in all non-dispositive motions that counsel has conferred in good faith with the parties. Local Rule 5(c)(2). Furthermore, local counsel is responsible to the Court for the conduct of the case. *Id.*

In this case, all three pro hac vice attorneys are members of the bar of the Commonwealth of Massachusetts and the federal bar of the District of Massachusetts. On their motion for pro hac vice admission, they stated the grounds for admission as counsel's long-standing relationship with the client, Republic Western. They, together with local counsel, Elizabeth McDonough Noonan, certified to the requirements and obligations imposed by this Court for pro hac vice admission.

### 2. *Procedure for Disqualification*

 Pro hac vice counsel, once admitted, may be disqualified upon a motion of the Court or other parties. Disqualification is warranted if counsel has failed "to fulfill the requirements of this rule or when the proper administration of justice so requires." Local Rule 5(c)(3).

 Although the appearance of counsel on a pro hac vice basis is common throughout the country, there are no national standards on either admission or disqualification of pro hac vice counsel. There are, however, some generally accepted policies followed by courts. First, the question of admission or disqualification in federal district courts is governed by that district's rule-making power over the conduct of their business. *See* 28 U.S.C. § 2071. Pro hac vice admission is generally considered a privilege and not a right. *See, e.g., Mruz v. Caring, Inc.,* 107 F.Supp.2d 596, 602 (D.N.J.2000); *Jensen v. Wisconsin Patients Compensation Fund,* 241 Wis.2d 142, 621 N.W.2d 902, 905 (2001); *but see Sanders v. Russell,* 401 F.2d 241 (5th Cir.1968) (involving then unpopular civil rights claims); *Lefton v. Hattiesburg,* 333 F.2d 280 (5th Cir.1964) (same). The right to practice pro hac vice before a court is not granted by statute or by the Constitution. *See Leis v. Flynt,* 439 U.S. 438, 442–43, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979)(per curiam). In criminal cases, courts must comply with the Sixth Amendment requirements of a defendant's right to counsel of choice. This right, however, is not absolute and may give way to the Court's need to control the orderly conduct of justice. *See United States v. Collins,* 920 F.2d 619, 624–26 (10th Cir.1990). The instant case, of course, is a civil action and Republic Western has no constitutional right to counsel of its choice. *See id.*

Although counsel has no property right to admission pro hac vice, some courts have implied that once admitted pro hac vice, a lawyer must have a limited property right mandating some degree of procedural due process prior to disqualification. *See Kirkland v. National Mortgage Network, Inc.,* 884 F.2d 1367, 1371 (11th Cir. 1989) (local rules required notice and hearing prior to disqualification); *Bank of Hawaii v. Kunimoto,* 91 Hawai'i 372, 984 P.2d 1198, 1214 n. 11 (1999) (procedural due process, although not argued below, was not violated). This Court notes, however, that the client's interest should be paramount, not counsel's interests. After all, counsel is only admitted pro hac vice because of a special need or relationship with the client. *See* Local Rule 5(c)(1).

 Certain situations warrant disqualification without notice and hearing.

A court may disqualify pro hac vice counsel, without a hearing, upon knowledge of counsel's conflict of interest or during trial in order to maintain order. An immediate decision in the course of trial may be necessary to preserve the integrity of the proceeding. *See Collins*, 920 F.2d at 627; *State v. Sundel*, 460 A.2d 939, 943 (R.I. 1983) (trial court, in middle of criminal trial, after numerous warnings to counsel, revoked pro hac vice status); *see also United States v. Dinitz*, 424 U.S. 600, 612, 96 S.Ct. 1075, 47 L.Ed.2d 267 (Burger, C.J., concurring) (trial judge has a duty to act promptly to stop professional misconduct in course of trial).

Outside of the trial setting, however, courts have been inclined to issue a show cause order and hold a hearing prior to the final determination of whether to revoke pro hac vice status. This Court will follow those jurisdictions that, for judicial policy reasons, grant some notice and hearing to counsel before revocation. *See, e.g., United States v. Summet*, 862 F.2d 784, 786 (9th Cir.1988) (District Court entered a show cause order and held a hearing before revoking pro hac vice status); *United States v. Cooper*, 821 F.2d at 842–43 (pro hac vice admission revoked after hearing in criminal case); *Nault's Auto. Sales, Inc. v. American Honda Motor Co. Inc.*, 148 F.R.D. 25, 28 (D.N.H.1993) (upon motion by opposing party, hearing on pro hac vice status held in civil case); *State v. Kavanaugh*, 52 N.J. 7, 243 A.2d 225, 228 (1968) (New Jersey Supreme Court ordered trial judge to revoke pro hac vice admission in criminal case unless satisfactory cause is shown at hearing); *Royal Indemnity Co. v. J.C. Penney Co., Inc.*, 27 Ohio St.3d 31, 501 N.E.2d 617, 621 (1986) (pro hac vice admission in civil case revoked after hearing); *Filppula–McArthur v. Halloin*, 241 Wis.2d 110, 622 N.W.2d 436 (2001) (revocation of pro hac vice status upheld after motion by party and hearing in a civil case); *Jensen*, 621 N.W.2d at 906 (notice and hearing required for judicial policy reasons, but quality of notice and hearing left to discretion of lower courts).

 The Third Circuit has set forth basic guidelines for a District Court to follow before revoking an attorney's pro hac vice status. *See Taberer v. Armstrong World Indust., Inc.*, 954 F.2d 888, 910 (3rd Cir.1992) (citing *Johnson v. Trueblood*, 629 F.2d 302 (3rd Cir.1980)). The attorney must receive notice of the conduct placing his or her pro hac vice status at risk. *Id.* The Court must explain the standard used to decide whether to revoke the status. *Id.* The attorney is entitled to an opportunity to respond and written reasons for any revocation. *Id.* This Court will follow these general guidelines.

### 2. Show Cause Order

 Defendant Republic Western's pro hac vice counsel will be ordered to show cause why their pro hac vice admission to appear before this Judge should not be revoked. The basis of this order is counsel's false and misleading affidavit, filed in support of the frivolous motion to disqualify. All three pro hac vice counsel, Mr. MacLeish, Ms. Sankaran and Mr. Sherman, will be deemed subject to this order.

Although Ms. Sankaran signed the affidavit, Mr. MacLeish ratified that affidavit since he was present at the conference, filed and argued a frivolous motion based on that affidavit, and is Ms. Sankaran's supervisor. Therefore, he has adopted that false and misleading affidavit as his own. All three attorneys' names are on the motion to disqualify and accompanying memorandum of law, based on that false and misleading affidavit. Under Rule 5.1(c), a lawyer is responsible for the conduct of another lawyer's violation if "the lawyer orders or, with knowledge of the

specific conduct, ratifies the conduct involved" or is a partner and fails to take reasonable remedial action. R.I. Rules of Prof'l Conduct R. 5.1(c) (2001).

Filing a false and misleading affidavit and a frivolous motion to disqualify a judge demonstrates that those lawyers are not acting as officers of this Court, but rather are antagonists to this Court. The affidavit and the motion constitute prima facie a violation of the Rules of Professional Conduct of the Supreme Court of Rhode Island. All counsel practicing in the Court, including pro hac vice counsel, must abide by those disciplinary rules. Local Rule 5(c)(1). It appears to this Court that, by preparing and submitting an unwarranted and unjustified affidavit and motion, counsel has engaged in unethical conduct.

Specifically, the Court concludes that Ms. Sankaran, Mr. MacLeish, and Mr. Sherman prima facie have violated the following Rules of Professional Conduct:

Rule 3.1. Meritorious claims and contentions. A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.

Rule 3.2. Expediting litigation. A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

Rule 3.3. Candor toward the tribunal. (a) A lawyer shall not knowingly:

(1) make a false statement of material fact or law to a tribunal.

Rule 3.5. Impartiality and decorum of the tribunal. A lawyer shall not:

(c) engage in conduct intended to disrupt a tribunal.

Rule 8.4. Misconduct. It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.

· · · · ·

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

Because of this unethical conduct, this Court considers revocation of counsels' pro hac vice status the most appropriate sanction. Counsel will be ordered to show cause why they should not be adjudged in violation of the above-quoted disciplinary rules and why, if found to be in violation, their privilege of appearing pro hac vice in the instant matter should not be revoked. They will have 20 days to respond in writing after the show cause order is issued.

## B. OTHER SANCTIONS

The Court invites plaintiff's counsel to file for sanctions under Rule 11 against pro hac vice counsel and local counsel as well. All those lawyers signed and proffered a motion to disqualify that was not well founded in fact or in law. Plaintiff's counsel shall have 30 days to file such a motion and Republic Western's attorneys will have 20 days thereafter to respond. The Court will schedule a hearing on both matters at the same time. In the meantime, all other activity in this case will remain stayed until these two matters are resolved.

## CONCLUSION

The motion to disqualify the Court hereby is denied. Further proceedings in this case will remain stayed until this Court resolves the matter of sanctions and the revocation of the pro hac vice status of Republic Western's attorneys.

It is so ordered.