**In the Matter of Vincent A. INDEGLIA.**

**No. 2000–509–M.P.**

Supreme Court of Rhode Island.

Jan. 26, 2001.

---

David Curtin, Chief Disciplinary Counsel, For Plaintiff.

Stephen Famiglietti, Susan Carlin, Providence, For Defendant.

Present WEISBERGER, C.J., BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This disciplinary proceeding comes before this Court pursuant to the provisions of Article III, Rule 6(d), of the Supreme Court Rules of Disciplinary Procedure.

The Disciplinary Board of the Supreme Court (board) has forwarded its recommendation that the respondent, Vincent A. Indeglia (respondent), be suspended from the practice of law. On November 30, 2000, the respondent appeared before the Court, with counsel, pursuant to an order directing him to show cause why the disciplinary sanction recommended by the board should not be imposed. After consideration of the findings and recommendation of the board, the arguments of counsel, and a statement from the respondent, it is the opinion of this Court that cause has not been shown and that the disciplinary sanction recommended by the board should be imposed.

The board convened a disciplinary hearing on August 29, 2000. The respondent did not dispute the factual allegations asserted by disciplinary counsel, admitted to violating several provisions of Article V of the Supreme Court Rules of Professional Conduct, and provided mitigation testimony to explain his actions and to seek to ameliorate the severity of any discipline that may be imposed.

■ The undisputed facts, as pertinent to this disciplinary proceeding, are as follows. The respondent was retained to represent S.J.V. Electric (S.J.V.) to collect a debt owed by John T. Callahan and Sons (Callahan). In June 1995, he obtained a default judgment against Callahan for the original debt owed, plus interest, in the amount of $27,400. Interest continued to accrue on the judgment, and respondent began efforts to collect that award. In October 1996, counsel for Callahan offered to satisfy the judgment with a payment of $30,000, payable in three monthly installments of $10,000 each, with payments to be concluded within ninety days.

The respondent immediately conveyed this settlement offer to Scott J. Viveiros (Viveiros) the principal of S.J.V. Viveiros rejected that settlement offer, demanding the full amount of all accumulated principal and interest, payable in one lump sum. In direct contravention of his client's directive, respondent accepted Callahan's settlement proposal. He received three $10,000 checks, one each in November and December 1996, and the final payment in February 1997. He did not advise his client that he had accepted the settlement proposal and that he had received these funds.

Upon receipt, each check was deposited by respondent into his client's account. However, respondent also kept funds of his own in that account, and issued checks drawn on that account for both business and personal reasons. The respondent compounded this error by failing to balance this account on a regular basis.

In February 1997, after receipt of the final installment payment, respondent prepared to disburse the settlement proceeds to his client. When he reviewed his account prior to issuing payment, he discovered the account balance was approximately $17,000, significantly less than the amount he erroneously believed was in the account, and $13,000 less than he had collected on behalf of S.J.V.

The respondent was clearly unable to forward to his client the funds the client was entitled to receive. Caught in a predicament caused by his own misconduct, he sought to extricate himself by weaving a web of false representations to placate his client and afford him the time to accumulate the funds necessary to pay S.J.V. in full.

On February 27, 1997, he advised Viveiros that he had collected $14,000, and was continuing his efforts to collect the remainder of the full amount owed. He forwarded a payment in the amount of $14,000 at that time. In May 1997, he advised Viveiros that he had received additional funds on his behalf, and forwarded a check for $7,500. One year later, in May 1998 respondent forwarded $3,535, which he believed was the remaining amount of money owed to S.J.V. Viveiros disputed this amount, and on July 23, 1998, respondent

remitted $944, which Viveiros accepted as settlement in full.[1]

The respondent also represented S.J.V. in regard to a different matter that was in litigation. Viveiros became dissatisfied with the manner in which respondent was representing him in that case. That dissatisfaction led Viveiros to file a complaint in 1999 against respondent with the board. It was during the investigation of that complaint that respondent readily admitted his misconduct as it related to the Callahan collection matter.[2]

During the course of the disciplinary investigation, respondent cooperated fully and completely with disciplinary counsel in divulging all of the above-noted facts. He readily admitted his misconduct at the hearing before the board, and accepted full responsibility for the "parade of horribles," as he described it, which he had set in motion. Based upon these undisputed and freely admitted facts, the board concluded that respondent had violated the following Rules of Professional Conduct: 1.2(a); 1.4(a); 1.15(a)(b); and 8.4(c). We shall address each of these findings in the order presented.

Rule 1.2(a), entitled "Scope of representation," provides, in pertinent part, as follows:

> "A lawyer shall abide by a client's decisions concerning the objectives of representation * * * and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter."

■ It is axiomatic that the decision of whether to accept a settlement offer in a civil proceeding rests in the hands of the client. An attorney may counsel a client on whether to accept or reject an offer, and provide his or her advice on whether an offer is acceptable or advisable. If an attorney believes that a client's rejection of a settlement proposal is unreasonable, he or she must so advise the client. If the client does not accept the attorney's recommendation, the attorney can not usurp this ultimate decision and settle a claim without the client's consent. Accordingly, by accepting Callahan's offer, against the express directive of his client, the respondent clearly has violated the directive of Rule 1.2. Whether or not he believed the client's settlement position was unreasonable in these circumstances is irrelevant.

Rule 1.4(a), as it existed at all times relevant to this proceeding,[3] provided: "A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." The respondent breached his obligations under this rule by failing to inform him that he had settled the case and received the settlement proceeds. The transmittal of untruthful information to a client does not keep that client "reasonably informed" about the status of the representation. Hence, respondent's failure to keep his client accurately informed, and his presentation of false information to the client is contrary to the requirements set forth in this rule.

■ Rule 1.15(a) requires an attorney to keep funds that are the property of a client or of third parties in an account separate from those funds which belong to an attorney. It is undisputed that respondent deposited the settlement funds into his designated client account. However, he also maintained funds of his own in that account, and used that account for unauthorized purposes. In determining whether this rule has been violated, this Court and the board consider the actual use of

---

1. The remaining funds collected constituted the agreed upon legal fee of respondent.

2. Ironically, the board determined that Viveiros's complaint concerning this second matter did not warrant any disciplinary action.

3. As a result of a revision of the rules effective April 7, 1998, then Rule 1.4(a) is now Rule 1.4(b).

the account, and not the designation appended to it by the attorney or the financial institution that acts as the account depository. By commingling his own funds with those of his client, respondent has violated the strict mandates of this rule.

Rule 1.15(b) requires the prompt delivery of funds in a lawyer's possession to those parties entitled to their receipt. The respondent failed promptly to deliver the funds upon receipt, and was unable to conclude making payment to his client for more than one year following the receipt of Callahan's final payment, in violation of this rule.

Lastly, Rule 8.4(c) provides that: "It is professional misconduct for a lawyer to * * * engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The respondent violated this rule by deceiving his client over an extended period about the status of his case. He did not inform his client that he had settled his case without authorization or that he had received settlement funds. He misled his client into believing that he was pursuing the collection of funds when those funds already had been received. He furthered this deception by making sporadic distributions to the client. These actions constitute a breach of his obligations under this rule.

■ Having made the above-noted findings and conclusions concerning the charged violations of the Rules of Professional Conduct, the board recommended that the appropriate disciplinary sanction to impose was a ninety-day suspension from the practice of law. The board found significant mitigating factors that the board believed warranted the imposition of a less harsh sanction than would appear to be in order based on these facts. First, the board noted that respondent had practiced law in this state since 1989 in a competent and ethical manner. Second, he accepted full responsibility for his ethical lapses in his representation of S.J.V. and was most contrite for his actions.

Third, the board made a specific finding, supported by the record, that respondent did not intend to convert his client funds; rather, his client was the victim of his shoddy administration of his client's account.

In fashioning its recommendation to this court, the board carefully considered our prior decisions of *In re Hodge,* 676 A.2d 1362 (R.I.1996); *In re Krause,* 676 A.2d 1340 (R.I.1996); and, *In re Watt,* 701 A.2d 319 (R.I.1997). In each of those cases the respective respondents were suspended from the practice of law for one year for commingling or conversion of client funds. However, in each of those cases the attorneys engaged in a pattern of conduct more pervasive than that of this respondent. Although it may be scant consolation to Mr. Viveiros, he appears to be the only client affected by the respondent's misconduct, and he was repaid in full before he filed a disciplinary complaint. Accordingly, the board recommended that we deviate from the sanction imposed in those other cases and suspend respondent for a shorter period.

■ "The purpose of professional discipline is to protect the public and to maintain the integrity of the profession." *In re Ricci,* 735 A.2d 203, 208 (R.I.1999); *In the Matter of Scott,* 694 A.2d 732, 736 (R.I. 1997). In determining the appropriate level of discipline to impose, we look at the conduct of the attorney, and any mitigating or aggravating circumstances that may be present. *See In the Matter of Fishbein,* 701 A.2d 1018, 1020 (R.I.1997).

We find it highly significant that respondent readily admitted his misconduct, that he repaid his client in full before any disciplinary complaint was filed, and that he fully and truthfully cooperated with the board. We find his remorse sincere, and believe that he will not be a danger to the public, and that he can once again be a competent, ethical practitioner of the law.

Nonetheless, we cannot condone his conduct as described herein. Accordingly, we adopt the recommendation of the board, and suspend the respondent, Vincent A. Indeglia, from the practice of law for ninety days. To avoid disruption to his present clients, we order that his period of suspension shall commence sixty days from the date of this opinion.

Justice LEDERBERG did not participate.