Joseph OBERT, Plaintiff,

v.

REPUBLIC WESTERN INSURANCE COMPANY, Joseph J. Fratus, Stephanie Fratus Forte, and Carissa Fratus, a Minor, p.p.a. Joseph J. Fratus and Stephanie Fratus Forte, Defendants.

Republic Western Insurance Company, Third-party plaintiff,

v.

Jefrey C. Schreck, a professional corporation, Third-party defendant.

C.A. No. 01–324L.

United States District Court, D. Rhode Island.

May 28, 2003.

---

Max Wistow, Stephen P. Sheehan, Wistow & Barylick Incorporated, Providence, RI, for plaintiff.

Gerald J. Petros, Hinckley, Allen & Snyder, Providence, RI, Elizabeth McDonough Noonan, Adler Pollock & Sheehan, Providence, RI, Richard Daniel Prentiss, Rachelle R. Green, Peter A. Frazier, Holland & Knight LLP, Providence, RI, Anthony M. Traini, Providence, RI, Peter J. Cerilli, Cerilli, McGuirl & Bicki, Providence, RI, Fred T. Polacek, Providence, RI, Roderick Macleish, Jr., Robert A. Sherman, Annapoorni Sankaran, Greenberg Traurig, LLP, Boston, MA, Thomas Kiley, Cosgrove Eisenberg & Kiley, Boston, MA, for defendants.

Thomas C. Angelone, Hodosh, Spinella & Angelone, Providence, RI, Mark T. Nugent, Morrison, Mahoney & Miller, Providence, RI, Mark C. Hadden, Providence, RI, David E. Maglio, David E. Maglio & Associates, P.C., Max Wistow, Stephen P. Sheehan, Wistow & Barylick Incorporated, Providence, RI, Edwin F. Landers, Jr., Morrison, Mahoney & Miller, Boston, MA, Scott Douglas Burker, Morrison, Mahoney & Miller, Boston, MA, James A. Murphy, Murphy, Pearson, Bradley & Feeney, San Francisco, CA, Stephanie S. Gelber, James J. Duggan, John R. Condren, Lustig & Brown, LLP, Buffalo, NY, for consolidated defendants/third-party plaintiffs/consolidated counter-claimants/consolidated counter-defendants/consolidated-third party defendants.

David Jesse Oliveira, Providence, RI, for interested party.

Elizabeth McDonough Noonan, Adler Pollock & Sheehan, Providence, RI, Roderick Macleish, Jr., Robert A. Sherman, Annapoorni Sankaran, Greenberg Traurig, LLP, Boston, MA, for counter-claimant, third-party plaintiff.

Edwin F. Landers, Jr., Scott Douglas Burke, Morrison, Mahoney & Miller, Boston, MA, Mark T. Nugent, Morrison, Mahoney & Miller, Providence, RI, for third-party defendant.

Peter J. Cerilli, Cerilli, McGuirl & Bicki, Providence, RI, Fred T. Polacek, Providence, RI, for cross-claimant.

Gerald J. Petros, Hinckley, Allen & Snyder, Providence, RI, Elizabeth McDonough Noonan, Adler Pollock & Sheehan, Providence, RI, Richard Daniel Prentiss, Rachelle R. Green, Peter A. Frazier, Holland & Knight LLP, Providence, RI, Anthony M. Traini, Providence, RI, Roderick Macleish, Jr., Robert A. Sherman, Annapoorni Sankaran, Greenberg Traurig, LLP, Boston, MA, Thomas Kiley, Cosgrove Eisenberg & Kiley, Boston, MA, for cross-defendant.

## MEMORANDUM AND ORDER

LAGUEUX, Senior District Judge.

This matter is before the court on objections to the attached Report and Recommendation of Magistrate Judge Jacob Hagopian. Objecting are Republic Western Insurance Company's former attorneys in this matter, Robert A. Sherman, Roderick Macleish, Jr., and Annapoorni R. Sankaran, all admitted pro hac vice, as well as Republic Western's local counsel, Elizabeth McDonough Noonan, Todd D. White, and their law firm, Adler, Pollock & Sheehan, P.C.

On May 1, 2002, this Court ordered pro hac vice counsel to show cause why their pro hac vice status should not be revoked based on their actions in pursuit of an unsuccessful motion to recuse that they filed on behalf of their client. In response to this Court's invitation, see *Obert v. Republic Western Ins. Co.*, 190 F.Supp.2d 279, 300 (D.R.I.2002), Plaintiff's attorneys also filed a motion for sanctions stemming from those same activities.

This Court referred both matters to the magistrate judge, who, after a two day hearing, concluded that MacLeish and

Sankaran had violated the Rhode Island Rules of Professional Conduct and that all defense counsel had violated Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. The magistrate judge recommended revoking the pro hac vice status of MacLeish and Sankaran, and imposing monetary sanctions on all involved, including the law firms of Adler Pollock & Sheehan, P.C. and Greenberg Traurig, LLP, with which Sherman, MacLeish and Sankaran are affiliated. In addition, he recommended requiring MacLeish, as a "Rule 11 recidivist," to complete a legal ethics course sponsored by his local bar association.

■■■ There is no need to rehearse here the well-traversed ground of this litigation or the events that precipitated the instant proceedings.[1] Having reviewed the parties' memoranda and heard oral arguments, this Court without further ado adopts the disposition recommended by the magistrate judge, subject to the following revisions. The magistrate judge recommended that the sanctioned parties be required to pay Plaintiff's attorneys' fees jointly; it is more accurate to say that they are jointly *and severally* liable for those payments. Furthermore, requiring MacLeish to complete an ethics course is unnecessary, as revocation of his pro hac vice status and the imposition of sanctions should serve Rule 11's purpose of deterring similar conduct in the future. *See* Fed.R.Civ.P. 11(c)(2).

■■ Pro hac vice counsel contend that the local rules of this district, specifically Rule 4(e)(1), afford them the opportunity to be heard by a panel composed of all of the active judges of this court prior to revocation of their conditional status.[2] While Rule 4(e)(1) preserves the option of referring the matter to a disciplinary panel, as this writer did in *United States v. Cooper*, 675 F.Supp. 753 (D.R.I.1987), referral here is not mandatory, particularly in light of the 1997 (post-*Cooper*) amendment to Local Rule 5(c), which governs the admission of pro hac vice counsel.

Local Rule 5(c)(3), captioned "Disqualification of Pro Hac Vice Counsel" currently provides that "[c]ounsel admitted *pro hac vice* may be disqualified upon motion of the Court ... for failure to fulfill the requirements of this rule or when the proper administration of justice so requires." (emphasis in original) Given the nature of the conduct detailed by the magistrate judge, and the conclusion that counsel violated the Rules of Professional Conduct and Rule 11, it is within the discretion of this Writer to determine that "the proper administration of justice ... requires" revocation of counsel's pro hac vice status. Accordingly, as is by now obvious, this Court declines to refer the matter to a panel of judges.

In conclusion, this Court hereby (1) revokes MacLeish's and Sankaran's pro hac vice status; (2) approves Sherman's withdrawal from the case; and (3) orders MacLeish, Sankaran, Sherman, Greenberg

1. For a full summary of the case's bloody history, see *Obert*, 190 F.Supp.2d at 281–83.

2. Local Rule 4(e)(1) provides that:
 An attorney who is convicted of a crime against the United States or any State involving moral turpitude or who otherwise fails to comply with his oath or affirmation of admission to this bar may be suspended from practice in this court with or without

conditions, or disbarred, or otherwise disciplined. Except as provided thereafter, such action shall not be taken unless the attorney has been afforded an opportunity to be heard before a panel composed of all active judges of this court and a majority of the judges composing the panel concur in the issuance of an order directing that such action be taken.

Traurig, White, Noonan and Adler Pollock & Sheehan to pay Plaintiff's attorneys' fees in the amount of $31,331.25, for violating Rule 11 and 28 U.S.C. § 1927. Those individuals and law firms are jointly and severally liable for those payments.

It is so ordered.

## REPORT AND RECOMMENDATION

HAGOPIAN, United States Magistrate Judge.

In this case, attorneys for Republic Western Insurance Company ("Republic Western") attempted to make something out of nothing in a deliberate attempt to judge-shop, plain and simple. They misrepresented facts, made baseless unsupportable arguments and wasted the time and resources of this Court. It is this Court's chore now to find responsibility for these misdeeds and recommend appropriate corrective action.

This matter is before the Court on the Show Cause Order issued by the Senior United States District Judge Ronald R. Lagueux, directed to Attorneys Roderick MacLeish, Jr., Robert A. Sherman and Annapoorni Sankaran of the Boston law firm Greenberg Traurig, LLP, ("Greenberg Traurig") on why they should not be adjudged in violation of the Rhode Island Rules of Professional Conduct, specifically Rules 3.1, 3.2, 3.3, 3.5 and 8.4, and why, if found to be in violation, their privilege of appearing *pro hac vice* in the instant matter should not be revoked. Additionally, this matter is before the Court on the plaintiff's motion for sanctions.

These matters have been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B). Two days of hearings were held affording each mentioned attorney for Republic Western an opportunity to show cause. Given the hearings held and the record before me, I find:

(1) Attorney Annapoorni Sankaran violated the Rhode Island Rules of Professional Conduct;

(2) Attorney Roderick MacLeish violated the Rhode Island Rules of Professional Conduct;

(3) Attorney Robert Sherman did not violate the Rhode Island Rules of Professional Conduct;

(4) Attorneys Sankaran and MacLeish's *pro hac vice* status in this case should be revoked;

(5) Attorneys Roderick MacLeish, Robert Sherman, Annapoorni Sankaran and the law firm Greenberg Traurig violated Fed.R.Civ.P. 11;

(6) Attorneys Elizabeth Noonan and Todd White and the law firm Adler Pollock & Sheehan, P.C. ("Adler Pollock & Sheehan"), violated Fed.R.Civ.P. 11;

(7) As sanctions, MacLeish, Sankaran, Sherman, Noonan, White, Greenberg Traurig and Adler Pollock & Sheehan, should pay Plaintiff's attorneys' fees jointly, in the amount of $31,331.25;

(8) As further sanctions, I recommend that MacLeish be required to attend an ethics class sponsored by his local Bar Association; and

(9) Attorneys Sankaran, MacLeish, Sherman, Noonan and White violated 28 U.S.C. § 1927.

### Background

A thorough recitation of the factual background of this litigation can be found at *Obert v. Republic Western Insurance Company*, 190 F.Supp.2d 279 (D.R.I. 2002),[3] and need not be repeated here. The relevant factual background for pur-

---

**3.** The Court refers the reader to this decision for a complete understanding of the back- ground of this case and the events leading up to this report and recommendation.

poses of this Report and Recommendation is as follows:

On September 5, 2001, defendant Republic Western filed a motion to disqualify Senior United States District Judge Ronald R. Lagueux from this case pursuant to 28 U.S.C. § 455(a). The motion was accompanied by a memorandum of law and several affidavits. Of particular importance to this report and recommendation is an affidavit filed by Annapoorni Sankaran, Esq., *pro hac vice* counsel to Republic Western. In the affidavit, Attorney Sankaran made several misrepresentations of fact:—(a) she repeatedly characterized an in chambers conference held by Judge Lagueux as a hearing,—(b) she contended that Judge Lagueux "was going to call Judge Gorton [of the District of Massachusetts] on the telephone and tell him to transfer [a related matter here],"—(c) she contended that Judge Lagueux refused to allow Republic Western's counsel an opportunity to be heard on plaintiff's motion for a temporary restraining order, and—(d) she contended that Judge Lagueux refused to acknowledge a document offered by defense counsel during the TRO conference, a so called "buff copy" of a rental agreement which went to merits of the case and not to the issue of whether a TRO should be granted.

In addition to filing a false and misleading affidavit, Republic Western's counsel made frivolous arguments with unsupportable factual contentions in its motion to disqualify Judge Lagueux. Republic Western's counsel first made much to do about decisions and comments made by Judge Lagueux in prior litigation involving Republic Western. Republic Western cited a hearing on May 25, 2000, concerning a motion to amend its answer. In denying Republic Western's motion, Judge Lagueux found that the motion (filed six years after the filing of the Complaint, and

two years after a remand from the First Circuit) to be frivolous and suggested the possibility of sanctions. No sanctions were imposed, however.

Republic Western also based the motion to disqualify Judge Lagueux upon some purported irregularities with the assignment of this instant case. This action was filed on July 3, 2001, and had initially been randomly assigned to Judge Lisi. However, following the discovery that it was related to a previous case, it was re-assigned to Judge Lagueux-the Judge who handled the related case, pursuant to a long-standing practice in this Court. *See, e.g., United States v. Corrente,* C.R. No. 00–83L at 37–41 (Nov. 27, 2000). Republic Western contended in its motion for recusal that there was some sinister motive by a member of this Court's staff, by plaintiff's counsel, or overreaching by Judge Lagueux, to have the instant case assigned to Judge Lagueux.

After concluding that the affidavit was laced with falsities and that the remaining factual allegations set forth in the motion were completely and utterly unsupportable, the Court denied the motion for disqualification and found that *pro hac vice* counsel for Republic Western—Sankaran, MacLeish and Sherman, have prima facie violated the following Rhode Island Rules of Professional Conduct, *infra,* by submitting an affidavit containing false representations:

**Rule 3.1. Meritorious claims and contentions.** A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.

**Rule 3.2. Expediting litigation.** A lawyer shall make reasonable efforts to

expedite litigation consistent with the interests of the client.

**Rule 3.3. Candor toward the tribunal.** A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal.

**Rule 3.5. Impartiality and decorum of the tribunal.** A lawyer shall not: (c) engage in conduct intended to disrupt the tribunal.

**Rule 8.4. Misconduct.** It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; or ... (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

Accordingly, *pro hac vice* counsel were given an opportunity to respond and to be heard as to why they should not be held in violation of the above mentioned rules, and why, if in violation, their *pro hac vice* status should not be revoked. Additionally, the Court invited plaintiff's counsel to file a motion for sanctions against both the *pro hac vice* counsel and local counsel for Republic Western. Hearings were conducted for two days by the undersigned and the parties have supplied the court with extensive documentation. These matters are now ripe for a decision.

## I. SHOW CAUSE ORDER

### A. Annapoorni Sankaran

#### 1. Findings of Fact

■ The testimony adduced at the show cause hearing held before me demonstrates that Attorney Sankaran has shown cause: she has shown cause why she should be held in violation of the R.I. Rules of Professional Conduct. The testimony demonstrated that she attended the conference held by Judge Lagueux on August 9, 2001 concerning plaintiff's motion for a temporary restraining order ("TRO") and that she, along with Roderick MacLeish and Todd White, represented Republic Western at that conference. Sankaran testified at the show cause hearing that she is the one who drafted the affidavit which has been found to be false. The false affidavit attempted to convey the events that transpired at the August 9th, 2001, TRO conference before Judge Lagueux. On September 5, 2001, she filed the affidavit in support of the motion to disqualify Judge Lagueux. Attorney MacLeish reviewed her affidavit before it was submitted, and Sankaran made changes to it at his suggestion. The changes she made at Attorney MacLeish's suggestion were to depersonalize it, by referring to Judge Lagueux as the Court, and by removing a citation to the Code of Judicial Canons. The remaining contentions in the affidavit were hers.

Ms. Sankaran testified before me with respect to the specific statements of fact contained in the affidavit found untrue by Judge Lagueux. She testified that on or about August 7, 2001, Mr. Wistow, plaintiff's counsel, informed her via the telephone that there would be an in chambers conference with Judge Lagueux on August 9, 2001, concerning the plaintiff's motion for a temporary restraining order. Despite her insistence at the show cause hearing before me and in her affidavit that the conference with Judge Lagueux was a hearing, Ms. Sankaran testified that she did not bring witnesses to the conference and nor did she bring any exhibits with her. If Ms. Sankaran truly thought it was a hearing, she would have secured witnesses to testify or, at the very least, brought exhibits with her. Thus, I find her assertion that she truly thought it was a hearing to be wholly unconvincing.

Moreover, it was plaintiff's motion for a temporary restraining order. Temporary

restraining orders do not entail hearings. *See* Fed.R.Civ.P. 65(b). If the judge converted the motion into a preliminary injunction, then, and only then, would a hearing be required. I find that her characterization that the conference was a hearing contained in her affidavit to be a outright intentional falsehood.

With respect to her statement of fact in the affidavit that the Court failed to give Republic Western a meaningful opportunity to be heard during the temporary restraining order conference, the testimony demonstrated that the conference lasted some forty five minutes, with Mr. Wistow presenting his position for twenty minutes. She asserted at the hearing before me that MacLeish did speak during the TRO conference with Judge Lagueux and asked a number of questions, but MacLeish did not address the merits of the TRO. The testimony also demonstrated that despite Sankaran's assertion that MacLeish did not get a meaningful opportunity to be heard, Judge Lagueux did not grant the plaintiff's motion for a TRO. It is ironic that Sankaran is complaining about not having a meaningful opportunity to be heard when her client won the motion. Thus, I find her statement of fact contained in her affidavit that Republic Western was not given a meaningful opportunity to be heard to be intentionally false, designed solely to mislead the court.

Sankaran further stated in her affidavit that Judge Lagueux "was going to call Judge Gorton on the telephone and tell him to transfer [a related matter here]." However, at the hearing before me she testified that during the TRO conference, Mr. Wistow sought permission to communicate Judge Lagueux's view concerning the related matter to Judge Gorton via a brief. This was agreed to by Judge Lagueux, and understood by everyone at the conference that this would be done. Yet, she still falsely asserted in her affidavit that Judge Lagueux "was going to call Judge Gorton on the telephone and tell him to transfer [the related matter here]," in an effort to mislead the Court.

With respect to the frivolous motion, she testified that she conducted the legal research, and drafted and edited the memorandum of law. She testified that she choose to invoke 28 U.S.C. § 445(a) as a basis for disqualification because it was more benign than 455(b), where personal bias of the judge is required. Despite invoking 455(a), she testified that she used language in the memorandum of law indicating that she was proceeding under 455(b). Sankaran in fact alleged in the memorandum of law that Judge Lagueux had a personal bias.

Sankaran further testified she reviewed the local rules with respect to the assignment process and researched other jurisdictions with respect to the random assignment procedure. Following the written decision by Judge Lagueux, she looked into the *Corrente* decision, which outlines this court's procedure.

Sankaran testified that prior to filing the motion to disqualify Judge Lagueux, she circulated her affidavit and memorandum of law to MacLeish and Sherman, in addition to others at their firm, local counsel, and representatives from Republic Western. She testified that the motion and supporting affidavits were reviewed by Ms. Noonan at Adler Pollock & Sheehan.

The testimony also demonstrated that Sankaran and MacLeish attempted to remove Judge Lagueux from this case by filing a writ of mandamus with the United States Court of Appeals for the First Circuit and a petition for Multi–District Litigation. Both of these attempts failed.

## 2. Conclusions of Law

Upon consideration of the findings of fact *supra*, of the testimony of Ms. Sankaran, and of the record in this case, I find that she has failed to show cause on why she should not be held in violation of the Rhode Island Rules of Professional Conduct. I find that she violated the following Rules of Professional Conduct:

(1) **Rule 3.1,** since she knowingly filed an untruthful affidavit with the Court, which advanced and supported frivolous claims, *see, e.g., Goldberg v. Whitehead,* 713 A.2d 204, 206 (R.I.1998);

(2) **Rule 3.2,** since she filed an untruthful affidavit in support of the frivolous motion to disqualify, unnecessarily delaying the resolution of this case;

(3) **Rule 3.3 and 8.4,** since she submitted the false and misleading affidavit in support of a frivolous motion, *see, e.g., In re Schiff,* 677 A.2d 422, 423 (R.I. 1996); *In re Indeglia,* 765 A.2d 444, 448 (R.I.2001).

(4) **Rule 3.5,** since her untruthful affidavit was calculated and designed solely for the purpose to judge-shop.

## B. Roderick MacLeish

### 1. Findings of Fact

■ The testimony at the show cause hearing before me demonstrated that Attorney MacLeish represented Republic Western at the August 9, 2001 conference before Judge Lagueux. MacLeish had first hand knowledge of the events that transpired therein. The testimony demonstrated that Sankaran drafted the affidavit initially, which relayed facts regarding that conference. MacLeish reviewed the affidavit and made some minor changes to it. Other than the minor changes he suggested, he agreed with the affidavit. The facts demonstrate that he was Sankaran's supervisor, and he ratified the affidavit as his own since he read it, made some changes but did not corrected the falsities and inaccuracies contained therein. Moreover, MacLeish allowed his subordinate-Sankaran to submit the false affidavit. At the hearing before me he asserted that he stands by the untruthful affidavit as his own.

The testimony further demonstrated that Sankaran notified MacLeish that there would be a hearing on August 9, 2001 with respect to a temporary restraining order. (It has already been established that it was a conference, and not a hearing.) During the August 9th conference, MacLeish testified that Judge Lagueux invited Mr. Wistow to make his argument. Following Mr. Wistow's presentation, MacLeish testified that he spoke pertaining to two matters: (1) he presented the "buff copy" to the court,—which was not relevant to the TRO motion, and (2) he inquired about the assignment of the case-which again was not relevant to the TRO motion. Although he had two opportunities to make a presentation, he chose to present matters that were not relevant to the TRO motion. Nevertheless, MacLeish still claims he was not afforded a meaningful opportunity to be heard.

MacLeish further testified that the application was one for a TRO and *not* a preliminary injunction. He testified that there are two kinds of applications for a temporary restraining order, although this writer can only find one mentioned in the Federal Rules of Civil Procedure. MacLeish testified that Judge Lagueux did not grant the TRO, but either denied it or held it in abeyance. Thus, the question remains as to why MacLeish is even complaining about not being heard at the conference since plaintiff's motion for a TRO was not granted. Republic Western effectively won the motion.

MacLeish further testified about purported irregularities with the assignment of the case. He asserts that the case had been initially assigned to Judge Lisi, but following the filing of the second civil action cover sheet, it was re-assigned to Judge Lagueux. MacLeish described his efforts in getting to the bottom of this purported anomaly by assigning Sankaran to investigate the matter.

Despite appearing in federal court here on numerous occasions, and at federal courts around the country, MacLeish testified he did not know that *this* court assigns related matters to the same judge since there is nothing written in the local rules of this court about this practice. He also testified that his local counsel at Alder Pollock & Sheehan, a firm who appears in this Court on a regular basis, couldn't find anything in the local rules. MacLeish seems to rely on the local rules as a defense. What he does not testify to is what he knew about the local practice here, and selectively ignores case law on point. *See, e.g., Corrente,* C.R. No. 00–83L at 37–41 (Nov. 27, 2000).

In addition to the motion for disqualification, MacLeish testified that he and Sankaran tried to remove Judge Lagueux from the case by filing a writ of mandamus with the First Circuit and a petition for Multi–District Litigation.

## 2. Conclusions of Law

I find Roderick MacLeish not to be a credible witness. I make this assessment after observing him while he testified and observing his demeanor. I find that his testimony was evasive and he attempted to avoid confronting the issues presently before the Court. He failed to show cause on why he should not be held in violation of the Rhode Island Rules of Professional Conduct. I find that he violated:

(1) **Rule 3.1,** since he knowingly allowed the false affidavit of Attorney Sankaran to be filed with the Court, which he ratified as his own, which advanced and supported frivolous claims, *see, e.g., Goldberg v. Whitehead,* 713 A.2d 204, 206 (R.I.1998);

(2) **Rule 3.2,** since the untruthful Sankaran affidavit filed in support of the frivolous motion unnecessarily delayed the resolution of this case;

(3) **Rule 3.3 and 8.4,** since he submitted the false and misleading Sankaran affidavit, which he adopted as his own, in support of the frivolous motion, *see e.g., In re Schiff,* 677 A.2d 422, 423 (R.I. 1996); *In re Indeglia,* 765 A.2d 444, 448 (R.I.2001).

(4) **Rule 3.5,** since the untruthful Sankaran affidavit was calculated and designed solely for the purpose to judge-shop.

## C. Robert A. Sherman

### 1. Findings of Fact

 Mr. Sherman testified that he received a letter from Mr. Wistow regarding the conference to held on August 9th concerning plaintiff's motion for a TRO. He testified that he asked MacLeish to attend the conference to represent Republic Western. The testimony demonstrated that Sherman did not have firsthand knowledge of the events that transpired during the conference. He testified that he relied upon Sankaran and MacLeish to relay the facts which were contained in the affidavit.

### 2. Conclusions of Law

I find that Robert Sherman has not violated the Rhode Island Rules of Professional Conduct. Although he assumed full responsibility for the affidavit on the stand during the hearing on this matter, this

court should take action to maintain discipline only where it is warranted. The testimony demonstrated that Mr. Sherman had no culpability with respect to the false and misleading Sankaran affidavit. He did not sign it, he did not draft it, and nor did he have any first hand knowledge of the events set forth in the affidavit. He relied on Sankaran and MacLeish to relay those events. Accordingly, I find that Mr. Sherman is absolved of any violation of the Rhode Island Rules of Professional Conduct. Notwithstanding being absolved of any violation of the R.I. Rules of Professional Conduct, Mr. Sherman's culpability for violating Fed.R.Civ.P. 11 will be discussed *infra.*

### D. Sanctions for Violating the Rhode Island Rules of Professional Conduct for Attorneys Sankaran and MacLeish.

With respect to their status as *pro hac vice* counsel, MacLeish and Sankaran contend that they have a long standing relationship with Republic Western and to oust them from this case will cost a great deal of time and expense. *Pro hac vice* counsel gratuitously point out that Local Counsel will not be able to assume responsibility for this case. *But see* Local Rule 5(c)(2)(d)(local counsel shall "be responsible to the Court for the conduct of the case.")

▪ In the District of Rhode Island, *pro hac vice* counsel admissions are governed by Local Rule 5. In their motion for admission, *pro hac vice* counsel must agree to observe and to be bound by the Rhode Island Rules of Professional Conduct. *See* Local Rule 5(c). Revocation is warranted if counsel fails to "fulfill the requirements of this rule or when the proper administration of justice so requires." *See* Local Rule 5(c)(3). The Court also notes that

there is no constitutional right to counsel of one's choice in civil cases.

Since Sankaran and MacLeish failed to abide by the conditions of their *pro hac vice* status, by violating the Rhode Island Rules of Professional Conduct, revocation of their *pro hac vice* status is appropriate. I so recommend.

It is noteworthy to point out that since the show cause hearing on this matter, Republic Western has replaced its counsel. Accordingly, MacLeish and Sankaran have filed a "Notice of Withdrawal" of their appearance in this matter. Nonetheless, revocation of Sankaran and MacLeish's *pro hac vice* status is still appropriate. MacLeish and Sankaran have failed to file a *motion* seeking permission to withdraw, and thus, are still two of the many counsel of record in this case.

## II. MOTIONS FOR SANCTIONS

### A. Fed.R.Civ.P. 11 Motion.

At the Court's invitation, plaintiff filed a Fed.R.Civ.P. 11 motion for sanctions, based upon the frivolous motion to disqualify filed by Republic Western. *Obert,* 190 F.Supp.2d 279, 299–300. The Court found that the motion to disqualify was not "well founded in fact or in law." *Id.* Republic Western's counsel has filed an opposition thereto.

#### 1. Fed.R.Civ.P. 11 Standard

▪ Rule 11 is a mechanism designed to deter frivolous litigation. The purpose of Rule 11 is to deter dilatory and abusive tactics in litigation, and to streamline the litigation process by lessening frivolous claims or defenses. *Cruz v. Savage,* 896 F.2d 626, 630 (1st Cir.1990). Rule 11's goal is not reimbursement for costs spent, but rather sanction, "intended to bring home to the individual signer his personal, nondelegable responsibility." *Pavelic &*

*LeFlore v. Marvel Entertainment,* 493 U.S. 120, 126, 110 S.Ct. 456, 460, 107 L.Ed.2d 438 (1989). Rule 11 calls for the imposition of sanctions on a party "for making arguments or filing claims that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose." *Salois v. Dime Savings Bank of New York,* 128 F.3d 20, 27 (1st Cir.1997). If there is found to be a violation, courts can assess sanctions against "attorneys, law firms, or parties," instead of limiting the sanctions to the signers of the documents. *See* Rule 11(c).

Rule 11 of the Federal Rules of Civil Procedure provides, in relevant part:

> **(b) Representations to Court.** By presenting to the Court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> > (1) it is not presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > (2) the claims, defense, and other legal contentions therein are warranted by existing law or by nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> >
> > (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

▆▆▆▆ Imposition of Rule 11 sanctions does not require a finding of bad faith. *See Equal Employment Opportunity Commission v. Tandem Computers Inc.,* 158 F.R.D. 224, 226 (D.Mass.1994).

Subjective good faith is also not enough to protect an attorney from sanctions under Rule 11.

This Court's chore is now to evaluate the conduct of the attorneys in this case to determine if Rule 11 has been violated.

**2. Finding: Annapoorni Sankaran, Roderick MacLeish, Robert Sherman, Greenberg Traurig, Elizabeth Noonan, Todd White and Adler Pollock & Sheehan Violated Rule 11.**

To determine whether a Rule 11 violation occurred, the Court must first determine whether the claims advanced are frivolous. This has already been done by the district court. The district court made extensive and detailed findings that I need not revisit. Rather I must assess, whether, at the time the motion to disqualify was filed, the attorneys should have been aware that the claims they advanced were frivolous. If so, then the attorneys are liable for a Rule 11 violation, and are responsible for this wasteful venture of judicial resources. Republic Western's motion to disqualify was filed and advocated by Roderick MacLeish, Robert Sherman, Annapoorni Sankaran, Greenberg Traurig, Elizabeth McDonough Noonan, Todd White, and Adler Pollock & Sheehan.

**a. Republic Western's Claim That a Local Rule Was Violated.**

▆▆▆▆ The motion to disqualify first claimed that the local rules were violated. The evidence demonstrates that at the time the motion to disqualify was filed, Counsel ("Counsel" hereafter refers collectively to Sankaran, MacLeish, Sherman, Noonan and White) were aware of the following facts: (1) the instant case was first assigned to Judge Lisi, (2) an amended civil cover sheet, which designated re-

lated cases, was filed with the Court, and (3) the instant case was re-assigned to Judge Lagueux, the judge who handled the related cases. Counsel argued in their motion to disqualify and at the hearing on the motion to disqualify that some sinister plot existed to get Judge Lagueux to preside over this case. Counsel however, had *no* evidence to support such a ridiculous proposition, just speculation and innuendo.

Moreover, Noonan, White, MacLeish, Sherman and Sankaran ignored the well established exception of assigning related matters to the same judge, which has been a long standing practice in this court. *See, e.g., United States v. Corrente,* C.R. No. 00–83L at 37–41 (Nov. 27, 2000). Counsel, particularly Ms. Noonan and Mr. White, as local counsel, should have been aware of this procedure since they and their law firm are frequent litigators in this court.

It is further noteworthy to point out that Sankaran testified at the hearing before me that she inquired in the Clerk's Office, after the reassignment of this case to Judge Lagueux, on case assignments in general. She did not ask about this court's practice of handling the assignment of related cases, nor did she ask any particular questions regarding the assignment of this specific case. Any competent attorney would have realized that this case is related to others that have been before this court, particularly since at the time the motion to disqualify was filed, Sankaran, as well as the rest of Republic Western's counsel, was aware of the amended civil action cover sheet which designated related cases. If she had questions about the reassignment, she should have so specifically inquired prior to advancing such a frivolous claim.

Also on this point, MacLeish testified that he knows that courts regularly assign related matters to the same judge. Thus, it was patently unreasonable for counsel to allege a local rules violation when the attorneys were aware of, or should have been aware of, exceptions to the random assignment process. Any competent attorney would not have made such a claim. Accordingly, it is clear that counsel violated Fed.R.Civ.P. 11(b)(3), since no evidentiary support whatsoever existed for their claims, and Fed.R.Civ.P. 11(b)(2) since counsel ignored the law of this court. *See, e.g., Corrente.*

### b. Republic Western's Claim That Any Case Not Randomly Assigned Is Tainted with Partiality.

Second, counsel claimed in their motion to disqualify that any case not randomly assigned is tainted with partiality, requiring disqualification of the judge. However, as mentioned above, counsel ignored the well established exceptions to the practice of random assignment. *See e.g.* Local Rules 7(e), 7(g), 8. Moreover, counsel failed to set forth any statutory or constitutional bases for such a claim, probably because there are none. Rather, counsel made a frivolous argument based upon a decision from a federal district court in the District of Utah which interpreted the District of Utah's Local Rules. Obviously, such a decision is of no value here since this court does not operate under the District of Utah's local rules. Similarly, counsel also cited a case from the District Court in the District of Columbia, which interpreted that Court's local rules. Again, this has no relevance here.

In any event, this claim to disqualify Judge Lagueux had no legal basis whatsoever, and any competent attorney, given the facts and circumstances of this case, would not have made such a baseless argument, all in violation of Fed.R.Civ.P. 11(b)(2). Counsel, at the time the motion was filed, should have been aware that this claim was frivolous.

### c. Republic Western's Claim Concerning the Judge's Conduct in a Prior Case.

 Third, counsel claimed that disqualification was appropriate based upon the judge's conduct in a prior case. This claim concerns Judge Lagueux's comments in an decision rendered from the bench in May of 2000. There, Judge Lagueux made comments unfavorable to Republic Western. However, this fails to set forth an adequate ground for disqualification. A party's disagreement with a judge is not grounds for disqualification, even if the judge uses strong language. *See Liteky v. United States,* 510 U.S. 540, 554–555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) (judicial remarks that are critical or disapproving of, or even hostile to, counsel, the parties, or their case do not support a bias or partiality challenge). The law is clear on this point. Thus, it was objectively unreasonable for counsel to make such a claim. To do so is a violation of Fed. R.Civ. P. 11(b)(2).

### d. Republic Western's Claims Based on the False Affidavit.

 Fourth, Republic Western filed a false affidavit in support of its motion and drew from the affidavit grounds for disqualification. Unlike the above mentioned frivolous claims, the claims that were based upon the false affidavit are only attributable only to MacLeish, Sankaran and White. They were the attorneys who represented Republic Western at the temporary restraining order conference, and thus, were the individuals who had first hand knowledge of the events set forth in the affidavit. It is patently unreasonable for attorneys to file a false affidavit with the Court, and then draw on the affidavit to concoct grounds for the relief they seek. Sankaran, MacLeish and White, violated Fed.R.Civ.P. 11(b)(3), since the affidavit

had no basis in fact. It was however reasonable for Noonan and Sherman, who were co-counsel with MacLeish, Sankaran and White, to rely upon the averments in the affidavit, since affidavits are supposed to be truthful.

### e. Conclusion

Accordingly, I find that MacLeish, Sankaran, Sherman, Noonan and White have violated Rule 11(b) of the Federal Rules of Civil Procedure since they should have been aware that the claims they advanced were frivolous. The attorneys' law firms, Greenberg Traurig and Adler Pollock & Sheehan, are also liable for the Rule 11 violations. *See* Fed.R.Civ.P. 11(c).

### 3. Sanctions

 I find that the appropriate sanction for the Rule 11 violations is to require MacLeish, Sherman, Sankaran, Noonan and White, and their respective law firms, to pay plaintiff's attorneys' fees for opposing the frivolous motion to disqualify Judge Lagueux and to pay plaintiff's attorneys' fees for filing the Rule 11 motion itself.

 The United States Supreme Court and the First Circuit Court of Appeals use the lodestar approach to calculate attorney's fees. The lodestar approach multiplies the number of hours reasonably expended times a reasonable hourly rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Andrade v. Jamestown Housing Authority,* 82 F.3d 1179, 1190 (1st Cir.1996). Courts have deemed the lodestar fee presumptively reasonable, although it is subject to an upward or downward departure in certain circumstances. *See Lipsett v. Blanco,* 975 F.2d 934, 937 (1st Cir.1992).

 To calculate the reasonable hours expended, courts ascertain the time that

counsel actually spent on the case "and then subtract from that figure hours which are duplicative, unproductive, excessive, or otherwise unnecessary." *Grendel's Den v. Larkin,* 749 F.2d 945, 950 (1st Cir.1984). To determine the reasonable hourly rate, courts utilize the "prevailing market rates in the relevant community. . . ." *Andrade,* 82 F.3d at 1190.

### a. Reimbursement for the Work Expended in Filing an Opposition to the Motion to Disqualify

Here, plaintiff has submitted time computations and affidavits for time spent on opposing the motion to disqualify. Plaintiff submits that Attorney Wistow spent 47.45 hours and Attorney Sheehan, an associate from Wistow's office, spent 50.45 hours. However, after a review, I find the following time allocations are duplicative and/or excessive and should be deducted:

| | | |
|---|---|---|
| 9/5/01 | .1 | hour of Sheehan is duplicative |
| 9/5/01 | 1.0 | hour of Sheehan is duplicative |
| 9/24/01 | 2.5 | hours of Wistow are duplicative |
| 9/24/01 | 35.0 | hours of Sheehan are excessive, will be reduced to 20.0 hours |
| 10/24/01 | 1.0 | hour of Sheehan is duplicative |
| 10/30/01 | 1.0 | hour of Wistow is duplicative |
| 11/4/01 | .25 | hour of Wistow is duplicative |
| 1/11/02 | .25 | hour of Sheehan is duplicative |
| 1/18/02 | .25 | hour of Sheehan is duplicative |
| 1/18/02 | .25 | hour of Sheehan is duplicative |
| 1/23/02 | 1.0 | hour of Wistow is duplicative |
| 2/5/02 | 2.5 | hours of Sheehan are duplicative |

With the necessary subtractions made, plaintiff's counsel are entitled to compensation for the following hours for responding to the motion to disqualify: Attorney Wistow, 42.7 hours; Attorney Sheehan, 30.1 hours.

However, plaintiff admits that these time computations were made after the fact. That is, they did not keep contemporaneous time records. Republic Western argues that pursuant to *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 951 (1st Cir.1984), the fee award must be disallowed or substantially reduced. (". . . in cases involving fee applications for services rendered after the date of this opinion, the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for the substantial reduction in any award or, in egregious cases, disallowance.") I reject their contentions.

*Grendel's Den* is not applicable here. *Grendel's Den* applies to awards of fees made on "fee applications" for the prevailing party following the conclusion of a case. *Id.* This Court is not awarding fees for the entire case as contemplated in *Grendel's Den.* Rather, this court is awarding fees as a sanction because the defendants filed a frivolous motion, in a discreet part of this voluminous litigation. Thus, *Grendel's Den* is not applicable. Moreover, counsel have failed to identify any case which applies the contemporaneous time records requirement announced *Grendel's Den* to Rule 11 motions.

Furthermore, this Court is intimately familiar with the extensive filings pertaining to the frivolous motion to disqualify. The court has reviewed those documents and the hours claimed by plaintiff's counsel, and deducted hours which were duplicative and/or excessive. Thus, I find that contemporaneous time records are not required here.

### b. Reimbursement for the Work Expended in Filing the Rule 11 Motion.

Plaintiff also seeks reimbursement for his fees for filing the Rule 11 motion and supporting documents, and attendance at the hearing on this matter. Attorneys Wistow and Sheehan kept contemporaneous time records with respect to these matters. *See Grendel's Den, Inc. v. Larkin,* 749 F.2d at 951. Recovery for such work is permitted. *See* Fed.R.Civ.P. 11(c)(1)(A); *Silva v. Witschen,* 19 F.3d 725, 733 n. 15 (1st Cir.1994) (citations omitted). Plaintiff seeks reimbursement for Mr. Wis-

tow's 61.5 hours and Mr. Sheehan's 24 hours. However, I find plaintiff's Rule 11 Motion expenses should be reduced as follows:

| 4/13/02 | 1.0 | hour of Wistow is duplicative |
| 5/29/02 | 4.5 | hours of Sheehan are duplicative |
| 5/31/02 | 3.25 | hours of Sheehan are duplicative |

Accordingly, plaintiff is entitled to reimbursement for 60.5 hours for Mr. Wistow and 16.25 hours for Mr. Sheehan with respect to their Rule 11 motion. Thus, I find that Mr. Wistow is entitled to be compensated for a total 103.2 hours and Mr. Sheehan is entitled to be compensated for a total 46.35 hours.

### c. Reasonable Hourly Rate

Having determined the number of hours expended on responding to the motion to disqualify and filing the Fed. R.Civ.P. 11 motion, this Court must now determine a reasonable hourly rate. Mr. Wistow asserts that his customary fee is $300 per hour and Mr. Sheehan's hourly rate is $250.00. To determine the reasonable hourly rate, courts utilize the "prevailing market rates in the relevant community...." *Andrade*, 82 F.3d at 1190. The District Court is not obligated to adopt the petitioning attorney's customary billing rate or what the attorney asserts is the prevailing rate in the community. *Id.* On the contrary, the District Court is "entitled to rely on its own knowledge of attorney's fees in the surrounding area...." *Id.*

In Providence, an appropriate range for litigators is $125 to $200 per hour, with $200 per hour being reasonable for a "well established, highly regarded trial attorney in the Rhode Island legal community." *O'Rourke v. City of Providence*, 77 F.Supp.2d 258 (D.R.I.1999), *aff'd in part, rev'd in part on other grounds*, 235 F.3d 713 (1st Cir.2001). After researching awards made by other judges in this court, and upon information learned at settlement conferences, I find the rates asserted

by Attorneys Wistow and Sheehan exceed the norm. *See Cohen v. Brown University*, 2001 U.S. Dist. Lexis 22438 at 79 (D.R.I.2001)(Martin, M.J.); *Westenfelder v. Ferguson*, 2000 WL 303301, * 7 (D.R.I.2000)(Lovegreen, M.J.). I find that a acceptable rate for Mr. Wistow, in line with prevailing market rates in Providence, with his thirty two years of experience, is $225 per hour. I further find that an acceptable rate for Mr. Sheehan, based upon prevailing market rates and his experience, is $175 per hour.

### d. Total Fee Award

Accordingly, I find that attorneys' fees in the amount of $23,220.00 (103.2 × 225) should be awarded to Mr. Wistow, and $8,111.25 (46.35 × 175) should be awarded to Mr. Sheehan. MacLeish, Sherman, Sankaran, Noonan, White, Greenberg Traurig and Adler, Pollock & Sheehan shall be liable for paying such fees, jointly.

### 4. Additional Sanctions

In determining sanctions, a court may consider the wrongdoer's history. *Pope v. Federal Express, Corp.*, 49 F.3d 1327, 1328 (8th Cir.1995); *White v. General Motors Corp.*, 908 F.2d 675, 685 (10th Cir.1990) *cert. denied*, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850. Here, Mr. MacLeish is no stranger to Rule 11 violations. *See DeSisto College, Inc. v. Line*, 888 F.2d 755, 761 (11th Cir.1989). He has been found guilty of a Rule 11 violation by a court sitting in the Middle District of Florida, affirmed by the Court of Appeals for the Eleventh Circuit. *Id.* Since Mr. MacLeish is a Rule 11 recidivist, additional sanctions should be imposed on him. I recommend that he be required to attend a continuing legal education class in ethics, sponsored by his local Bar Association. Mr. MacLeish shall certify to this Court in

an affidavit within one year that he has complied with this directive.

Sanctions of this kind are expressly contemplated by the 1993 Advisory Committee Notes to Rule 11, and have been imposed by numerous federal courts. *See Bergeron v. Northwest Publications, Inc.,* 165 F.R.D. 518, 521 (D.Minn.1996); *LaVigna v. WABC Television, Inc.,* 159 F.R.D. 432, 437 (S.D.N.Y.1995); *Vandeventer v. Wabash Nat'l Corp.,* 893 F.Supp. 827, 860 (N.D.Ind.1995); *Curran v. Price,* 150 F.R.D. 85, 87 (D.Md.1993); *Oxfurth v. Siemens A.G.,* 142 F.R.D. 424, 428 (D.N.J. 1991).

## B. Plaintiff's Motion Pursuant to 28 U.S.C. § 1927

Plaintiff has also filed a motion pursuant to 28 U.S.C. § 1927 to seek recoupment of their attorneys' fees in response to the frivolous motion to disqualify. Title 28, Section 1927 of the United States Code provides:

Any attorney or person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

Sanctions are to be imposed when, from an objective standpoint, counsel's conduct has multiplied the proceedings and in doing so, has been unreasonable and vexatious, in the sense of being harassing or annoying. *Cruz v. Savage,* 896 F.2d 626, 631 (1st Cir.1990). Under this statute, a finding of bad faith is not required; but if bad faith is present, sanctions are to be imposed. *Id.*

As the First Circuit explained in *Cruz:*

The attorney need not intend to harass or annoy by his conduct nor be guilty of conscious impropriety to be sanctioned. It is enough that an attorney acts in disregard of whether his conduct constitutes harassment or vexation, thus displaying a serious and studied disregard for the orderly process of justice. Yet we agree with other courts considering this question that section 1927's requirement that the multiplication of the proceedings be "vexatious" necessarily demands that the conduct sanctioned be more severe than mere negligence, inadvertence, or incompetence. *Id.* (internal citations omitted).

Here, there is no question that the frivolous motion to disqualify unnecessarily multiplied the proceedings. There is also equally no question that the motion to disqualify was unreasonable and vexatious, brought solely for the purpose to judge-shop. I find the conduct here is well beyond mere negligence, inadvertence, or incompetence. Moreover, Sankaran and MacLeish acted in bad faith with respect to filing of the false affidavit, which, of course, provided additional bases for the frivolous motion to disqualify Judge Lagueux. Accordingly, I find that § 1927 provides an alternative basis for imposing sanctions.

## Conclusion

Accordingly, for the reasons stated above, I find:

(1) Attorney Annapoorni Sankaran violated the Rhode Island Rules of Professional Conduct;

(2) Attorney Roderick MacLeish violated the Rhode Island Rules of Professional Conduct;

(3) Attorney Robert Sherman did not violate the Rhode Island Rules of Professional Conduct;

(4) Attorneys Sankaran and MacLeish's *pro hac vice* status in this case should be revoked;

(5) Attorneys Roderick MacLeish, Robert Sherman, Annapoorni Sankaran and the law firm Greenberg Traurig violated Fed.R.Civ.P. 11;

(6) Attorneys Elizabeth Noonan and Todd White and the law firm Adler Pollock & Sheehan violated Fed.R.Civ.P. 11;

(7) As sanctions, MacLeish, Sankaran, Sherman, Noonan, White, Greenberg Traurig, and Adler Pollock & Sheehan should pay Plaintiff's attorneys' fees jointly, in the amount of $31,331.25;

(8) As further sanctions, I recommend that MacLeish be required to attend an ethics class sponsored by his local Bar Association; and

(9) Attorneys Sankaran, MacLeish, Sherman, Noonan and White violated 28 U.S.C. § 1927.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten days of its receipt. Fed.R.Civ.P. 72(b); Local Rule 32. Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia–Copete*, 792 F.2d 4 (1st Cir. 1986)(per curiam); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980).